No. 1-04-0154                                      FIRST DIV.   Filed:  3/12/07


KALYN ALWIN and DEVIN KOPPIE,              )     Appeal from the
Co-Administrators of the Estate of Martin  )     Circuit Court of
Larry Koppie, Deceased,                    )     Cook County.
                                           )
        Plaintiffs-Appellees,              )
                                           )
                  v.                       )
                                           )
THE VILLAGE OF WHEELING, THE CITY OF       )     Nos.   97 L 13527, 97 L 13636,
PROSPECT HEIGHTS, and PALWAUKEE            )            97 L 13715 & 97 L 13716
MUNICIPAL AIRPORT COMMISSION,              )
                                           )
        Defendants-Appellants             )
                                           )
(Albert-Culver USA, Inc., Alberto-Culver International,  )     Honorable
Inc., and Alberto-Culver Company, Defendants and        )        Thomas E. Flanagan,
Third-Party Plaintiffs-Appellees; Aon Aviation, Inc.,   )     Judge Presiding.
Third-Party Defendant-Appellee).                        )


        JUSTICE ROBERT E. GORDON delivered the opinion of the court:

        In October 1996 a private jet aircraft crashed while attempting a takeoff from Palwaukee

Municipal Airport (Palwaukee).  The plane was consumed by flames.  All four persons on board

(two pilots, a flight attendant and one passenger) were killed.

        Palwaukee is owned by defendants Village of Wheeling and City of Prospect Heights and

is managed through defendant Palwaukee Municipal Airport Commission (collectively,

municipal defendants).  The plane was owned by defendant Alberto-Culver USA, Inc., and/or

defendant Alberto-Culver International, Inc., and/or defendant Alberto-Culver Company

(Alberto-Culver).  One of the pilots, Robert Whitener, was employed by Alberto-Culver, and the

other, Martin Larry Koppie, was employed by Aon Aviation, Inc. The passenger, Arthur Quern, was an employee of Aon Risk Services, Inc., and an executive of Aon Corporation. (The flight was intended to transport Quern to Burbank, California.) Aon Aviation had secured the services of the flight attendant, Catherine Anderson.

The estates of the four decedents (Koppie, Whitener, Quern and Anderson) brought wrongful death and survival actions in the circuit court of Cook County against, *inter alia*, municipal defendants and Alberto-Culver. These actions were consolidated for trial. Prior to trial, Alberto-Culver settled with two of the four decedents' estates (Anderson and Quern) on behalf of Alberto-Culver and Aon Aviation, but not municipal defendants. Alberto-Culver subsequently filed contribution claims against Aon Aviation in the Anderson and Quern cases.[1] Also prior to trial, the circuit court granted summary judgment in favor of municipal defendants on their claim of immunity under the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1-101 *et seq*. (West 2002)). This decision effectively removed municipal defendants from the litigation. The plaintiffs and Alberto-Culver appealed under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). While this appeal was pending, trial began on the claims of the remaining two decedents' estates (Whitener against Aon Aviation, and Koppie against Alberto-Culver). In January 2001, the circuit court entered judgment on a jury

---

[1]The circuit court subsequently ruled in favor of Alberto-Culver on its contribution claims. This ruling was not appealed, and the contribution claims are not before this court for review.

verdict in favor of the Whitener estate in the amount of $18.9 million. However, the jury was "hopelessly deadlocked" on the Koppie case, and the circuit court declared a mistrial.

Meanwhile, in December 2000 this court reversed the circuit court's previous granting of summary judgment in favor of municipal defendants. *Anderson v. Alberto-Culver USA, Inc.*, 317 Ill. App. 3d 1104 (2000). Municipal defendants filed a petition for leave to appeal to the Illinois Supreme Court. On April 4, 2001, the petition was denied. *Anderson v. Alberto-Culver USA, Inc.*, 194 Ill. 2d 565 (2001). Following this denial, the appellate court issued its mandate, and municipal defendants were brought back into the litigation.

The Koppie estate's claims against municipal defendants and Alberto-Culver were tried before a jury beginning in February 2003. On May 5, 2003, the jury found in favor of the Koppie estate and against municipal defendants and Alberto-Culver in the amount of $11 million. In allocating the relative fault of the parties, the jury found that municipal defendants were 90% at fault, and Alberto-Culver and "Martin Larry Koppie/Aon Aviation, Inc." were each 5% at fault. On May 6, 2003, the circuit court entered judgment on this verdict. The circuit court denied municipal defendants' posttrial motions. Municipal defendants appeal. We affirm the judgment of the circuit court.

BACKGROUND

In its opinion in *Anderson*, this court stated the factual background regarding the crash:

"On October 30, 1996, a Gulfstream G-IV aircraft, registered to Alberto-Culver and piloted by Martin Larry Koppie and Robert Hampton Whitener, crashed while attempting its takeoff from Runway 16/34 at Palwaukee. Two other people, Arthur F.

3

Quern, a passenger, and Catherine Anderson, the flight attendant, were aboard the airplane at the time of the fatal accident. After the pilots had received clearance for takeoff, the airplane began to roll down the runway, but started to veer to the left side of the runway in the middle of its takeoff roll. According to the National Transportation Safety Board (NTSB), the aircraft rolled onto the grass off to the left side of the runway, traversing a shallow ditch that paralleled the runway, which resulted in the separation from the aircraft of landing gear, flight control surfaces and other airplane components. The ditch was about 2½ feet deep at its deepest point and 20 feet wide. A 90-foot-wide spray of mud fanned out onto the runway parallel to where the airplane entered the ditch. The airplane then slid on its belly and became airborne after it encountered a small berm at the departure end of the runway. Once airborne, the airplane flew over Hintz Road, contacted the embankment along Wolf Road and skipped over Wolf Road. The aircraft then slid across a field and stream gully and came to rest on the edge of an apartment complex parking lot where it was consumed by flames.

Examination of the aircraft by NTSB indicated no preexisting anomalies of the engines, flight controls or aircraft systems. The NTSB concluded that the drainage ditch paralleling Runway 16/34 was a factor relating to the accident." *Anderson*, 317 Ill. App. 3d at 1106-07.

No. 1-04-0154

In their third amended complaint, plaintiffs Kalyn Alwin and Devin Koppie,[2] co-administrators of the estate of Martin Larry Koppie, alleged negligence on the part of municipal defendants[3] in that they: (1) "[m]aintained their airport property and runways in such a condition as to pose a danger to aircraft taking off on said runways," (2) "[m]aintained ditches, hills, embankments and other uneven surfaces immediately alongside and adjacent to runway 34 so as to pose a hazard and danger to the landing gear and other component parts of aircraft departing on said runway," and/or (3) "[m]aintained ditches, hills, embankments and other uneven surfaces immediately alongside and adjacent to runway 34 so as to prevent aircraft from safely returning to the runway surface after straying from the center line during take-off."

In April 1998, prior to the first trial on the wrongful death claims of the decedents' estates, municipal defendants moved for summary judgment. In their motion, municipal defendants noted that the estates claimed, among other things, that the crash was caused by "certain facilities *** provided at the airport, such as *** uneven ground surfaces adjacent to the runway." According to municipal defendants, this claim referred to the runway safety area

---

[2]Kalyn Alwin and Devin Koppie are two of the three children of plaintiffs' decedent Martin Larry Koppie.

[3]Plaintiffs' complaint included allegations of negligence against Alberto-Culver as well. However, neither those claims nor the circuit court's (May 6, 2003) judgment against Alberto-Culver are before us in this appeal, which was taken by *municipal defendants* from the May 6, 2003, judgment against them.

(RSA) surrounding Palwaukee's runway 16/34, the runway from which the plane at issue attempted to take off. (It is undisputed that the 20-foot-wide drainage ditch that the aircraft traversed after it veered off runway 16/34 was within the RSA). Municipal defendants explained that, pursuant to the Federal Aviation Administration's (FAA) airport design advisory circular (Advisory Circular No. 150/5300-13, Change 2), an RSA is "an area surrounding a runway that has been prepared to reduce the risk of damage to airplanes in the event of an undershoot, overshoot, or excursion from the runway." While municipal defendants acknowledged that the RSA surrounding runway 16/34 did not comply with the FAA's airport design circular, they argued that summary judgment nevertheless should be granted in their favor because, under the Act, municipal defendants "are immune from liability for discretionary decisions regarding the maintenance and operation of the airport."

In their memorandum in support of their motion, municipal defendants pointed specifically to two provisions of the Act, sections 2-109 and 2-201. The first of these provisions, section 2-109, states: "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 1998). The second provision, section 2-201, describes one circumstance where a public employee is not liable:

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 1998).

Municipal defendants argued that their decisions regarding the RSA (*e.g.*, the decision not to improve the RSA after municipal defendants acquired the airport in 1986)[4] met the requirements of section 2-201. According to municipal defendants, the decisions regarding the RSA were made by employees holding positions involving the determination of policy or the exercise of discretion, and the decisions themselves constituted an exercise of discretion and a determination of policy. In municipal defendants' view, therefore, because the public employees who made the decisions regarding the RSA were shielded from liability by section 2-201, municipal defendants themselves were shielded from liability by section 2-109.

On May 24, 1999, the circuit court granted municipal defendants' motion for summary judgment, effectively removing municipal defendants from the litigation. In its order granting summary judgment, the court added, pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), that there was "no just reason to delay enforcement or appeal from this order." The plaintiffs (including the four decedents' estates) appealed, as did defendant Alberto-Culver. *Anderson*, 317 Ill. App. 3d at 1110. As previously indicated, this court reversed the circuit court's order granting summary judgment in favor of municipal defendants.

In reaching this decision, this court rejected municipal defendants' argument that they were shielded from liability by the Act. While acknowledging the rationale underlying the Act's

---

[4]In their brief to this court in the case at bar, municipal defendants acknowledge that "the RSA was in the same condition on the date of this crash as it was in when [municipal defendants] acquired the property."

granting of tort immunity to public officials, this court nevertheless noted the "traditional common law duty" of local governments "to maintain [public] property in a reasonably safe condition." *Anderson*, 317 Ill. App. 3d at 1111. This court added that this same duty was "restate[d] and codifie[d]" in section 3-102 of the Act. *Anderson*, 317 Ill. App. 3d at 1112. In this court's view, the ultimate issue in the case before it was "[t]he duty of the municipal defendants to *maintain* a public airport in a reasonably safe condition, or the absence of such duty, *** not whether to make *improvements* to the RSA." (Emphases added.) *Anderson*, 317 Ill. App. 3d at 1114. As this court noted elsewhere in its opinion, "[t]o maintain property is considered a ministerial act [*i.e.*, nondiscretionary]; to improve property falls under the discretionary decision of the government entity." *Anderson*, 317 Ill. App. 3d at 1112. In stating the issue as whether municipal defendants had a duty to *maintain* the airport in a reasonably safe condition, this court indicated that section 2-201, which provided immunity for *discretionary* acts, did not apply. Municipal defendants were not shielded from liability by the Act.

This court answered the duty question in the affirmative, concluding that municipal defendants had a duty to maintain the RSA in a reasonably safe condition. Looking to the remand, *Anderson* stated: "In the present case, plaintiffs may very well succeed in demonstrating that municipal defendants failed to use ordinary care in maintaining the RSA in a reasonably safe condition." *Anderson*, 317 Ill. App. 3d at 1117.

*Anderson* reversed the order of the circuit court, holding that: "summary judgment may not be entered where there is a material fact question of whether public property was maintained in conformity with applicable safety standards; the cause must be reversed and remanded for trial

8

for this determination." *Anderson*, 317 Ill. App. 3d at 1117. Municipal defendants filed a petition for rehearing. In denying the petition, this court entered an order stating, in pertinent part:

> "[I]n the instant case, municipal defendants' contention that they had discretionary immunity is misplaced because the 'discretion' they refer to involves the discretion to make improvements to Palwaukee. The ultimate issue in this case is whether municipal defendants breached their duty to maintain a public airport in a reasonably safe condition, not whether to make improvements to the RSA. Accordingly, municipal defendants' discretionary immunity should not shield them from liability for improper maintenance for the RSAs. A factfinder should decide whether municipal defendants breached their duty." *Anderson v. Alberto-Culver USA, Inc.*, Nos. 1-99-2166, 1-99-2256, 1-99-2387 cons. (January 10, 2001).

Municipal defendants petitioned for leave to appeal to the Illinois Supreme Court. On April 4, 2001, the petition was denied. *Anderson v. Alberto-Culver USA, Inc.*, 194 Ill. 2d 565 (2001). Following this denial, the appellate court issued its mandate, and municipal defendants were brought back into the litigation.

In the meantime, during the two-year period (May 1999 to April 2001) when municipal defendants were not in the litigation, the claims of the estates of Koppie (against Alberto-Culver) and Whitener (against Aon Aviation) were tried before a jury. As previously indicated, in January 2001, the circuit court entered judgment on a verdict in favor of the Whitener estate, but declared a mistrial in the Koppie case. Subsequently, after municipal defendants were brought

9

back into the litigation, the Koppie estate's claims against municipal defendants and Alberto-Culver were tried before a jury.[5]

This second trial of the Koppie estate's claims began in February 2003, and the verdict was entered in May 2003. A central issue in this trial was whether municipal defendants were negligent in maintaining the runway safety area along the west side of runway 16/34, and whether this negligence was a proximate cause of Martin Larry Koppie's death.

According to the testimony at trial, municipal defendants acquired Palwaukee from its previous, private owners in 1986. The majority of the purchase money came from federal funds, and the remainder was advanced by the State of Illinois. Municipal defendants agreed to own and operate the airport using funds generated from that ownership and operation (such as fees for rental of hangar space). As part of this purchase, the FAA required municipal defendants to agree to certain assurances. One of these assurances stated:

"[Municipal defendants] will suitably operate and maintain the airport and all facilities thereon or connected therewith with due regard to climatic, flood conditions. The airport and all facilities which are necessary to serve the aeronautical users of the airport other than facilities owned or controlled by [the] United States shall be operated at all times at a safe and serviceable condition and in accordance with the minimum

_____

[5]Alberto-Culver's contribution claims against Aon Aviation in the Anderson and Quern cases also were tried before this same jury.

standards as may be required or proscribed by the applicable federal, state and local agencies for the maintenance and operation. [Municipal defendants] will not cause or permit any activity or action thereon which would interfere with this use for airport purposes."

At the time of the purchase of Palwaukee, the RSA to the west of runway 16/34 contained a drainage ditch or depression that was about 2 feet deep and 20 feet wide. This ditch was situated about 20 feet from the western edge of the runway surface and ran the entire length of the runway. This drainage ditch was in essentially the same condition on October 30, 1996, the date of the accident in this case, as it was in 1986 when municipal defendants acquired Palwaukee.

The testimony at trial also referred to FAA airport design advisory circular No. 150/5300-13, which includes, among other things, a definition of an RSA and certain design standards for RSAs. These portions of the advisory circular were read aloud by witnesses for plaintiffs as part of their testimony. According to the advisory circular, an RSA is "[a] defined surface surrounding a runway prepared or suitable for reducing the risk of damage to airplanes in the event of an undershoot, overshoot or excursion from the runway." Under "Design Standards," the advisory circular states, in pertinent part, that an RSA shall be (1) "Cleared and graded to have no potentially hazardous ruts, humps, depressions or other surface variations," (2) "Drained by grading or storm sewers to prevent water accumulation," (3) "Capable under dry conditions of supporting snow removal equipment, aircraft rescue and firefighting equipment, and the occasional passage of aircraft without causing structural damage to the aircraft," and (4) "Free of

11

objects, except for objects that need to be located in the runway safety area because of their function."

On cross-examination, municipal defendants elicited testimony indicating that, upon completion of the purchase of Palwaukee in 1986, the airport was not required to comply immediately with all of the advisory circular's requirements. According to this testimony, compliance with a particular requirement was triggered when municipal defendants received federal funds to address the area in question.

Other testimony at trial indicated that it was very windy on the day of the accident and that high winds were a factor in the plane's veering from the runway centerline. It also was established at trial that less than three seconds elapsed from the time the plane veered from the centerline until the time it left the runway and went into the RSA. Once the plane left the runway surface, and during its "excursion" on the RSA, the plane lost several parts, including both landing gear and certain control parts of the aircraft.

Municipal defendants took the position at trial that the accident was caused by pilot error. According to testimony presented by municipal defendants in support of this position, there were a number of actions the pilots could have taken to prevent the plane from entering the RSA, including applying the plane's brakes and rudder. This testimony also indicated that, if the pilots were still unable to prevent the plane from veering off the runway, they should have aborted the flight.

At the close of plaintiffs' case, municipal defendants moved for a directed verdict. In this motion, municipal defendants argued, among other things, that removal of the drainage ditch

from the RSA would have been an improvement, rather than maintenance. Municipal defendants asserted that they had made no attempt to remove the drainage ditch, and they argued that, under the Act, they were shielded from liability for failure to make improvements. Municipal defendants argued, in addition, that plaintiffs had failed to establish that any breach of duty by municipal defendants proximately caused the crash. According to municipal defendants, it was pilot error that proximately caused the death of Martin Larry Koppie. The circuit court denied the motion for directed verdict.

After all the evidence had been presented, the trial judge instructed the jury. These instructions noted, among other things, "a certain statute [section 3-102 of the Act] which provided that: A local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition." The instructions also noted "a certain regulation" which provided that "[d]rainage ditches may not be located within a Runway Safety Area."

On May 5, 2003, the jury found in favor of plaintiffs (the Koppie estate) and against municipal defendants and Alberto-Culver in the amount of $11 million. In allocating the relative fault of the parties, the jury found that municipal defendants were 90% at fault, and Alberto-Culver and "Martin Larry Koppie/Aon Aviation, Inc." were each 5% at fault. The jury also addressed this special interrogatory: "Was something or the negligent conduct of someone else, other than [municipal defendants], the sole proximate cause of this aircraft accident?" The jury answered this interrogatory in the negative. On May 6, 2003, the circuit court entered judgment on the jury's verdict.

13

Municipal defendants filed posttrial motions for judgment notwithstanding the verdict (judgment n.o.v.) and for a new trial. Municipal defendants also renewed their motion for a directed verdict. In their motion for judgment n.o.v., municipal defendants contended, as they did in their motion for directed verdict, that they were entitled to tort immunity under the Act, and that it was pilot error, rather than municipal defendants' actions or omissions, which proximately caused the crash. In their argument before the circuit court regarding the motion for judgment n.o.v., municipal defendants addressed the contention that this court's rejection of municipal defendants' tort immunity defense in *Anderson* constituted the law of the case, and that municipal defendants therefore were barred from raising this same defense in the case at bar. Municipal defendants disagreed with this contention, arguing that *Anderson* was a summary judgment case and that, in the period since the decision in *Anderson*, a more detailed factual record had been developed.

In their posttrial motion for a new trial, municipal defendants pointed to a number of alleged errors relating to the submission of evidence, argument of counsel, and jury instructions. According to municipal defendants, these alleged errors warranted a new trial.

The circuit court denied municipal defendants' posttrial motions. Municipal defendants timely filed a notice of appeal.

Also on May 6, 2003, the day that judgment was entered on the Koppie estate's claims, the same jury that rendered the verdict in the Koppie case considered Alberto-Culver's contribution claims against Aon Aviation in the Anderson and Quern cases. Neither Alberto-

14

Culver nor Aon Aviation presented any new evidence in addition to what had been presented in the trial on the Koppie estate's claims. For purposes of Alberto-Culver's contribution claims, the jury found that Alberto-Culver was 6% at fault, Aon Aviation was 4% at fault, and municipal defendants, again, were 90% at fault. The circuit court entered judgment on this verdict. In its order, the circuit court noted that "[n]o judgment has been entered against the [municipal defendants] in the contribution cases because no claim for contribution was brought against the [municipal defendants] in the contribution cases." As previously indicated, the contribution cases are not before this court in the instant appeal.

ANALYSIS

Municipal defendants argue on appeal that the circuit court erred in denying their motions for directed verdict and for judgment n.o.v. In support of this position, municipal defendants contend, as they did below, that the removal of the drainage ditch from the RSA would have constituted an improvement rather than maintenance, and therefore any failure on their part to remove the ditch would fall within the scope and protection of the Act. Municipal defendants argue that (1) they had no duty "cognizable in tort to the plaintiff to change and improve the area in question," and (2) "if any duty is found to exist, [municipal defendants] possess immunity [under the Act] with respect to any tort claim for breach of that duty."

Municipal defendants offer an additional argument in support of their view that it was error to deny their motions for directed verdict and for judgment n.o.v. According to municipal defendants, plaintiffs failed to establish that the uneven surface of the RSA adjoining runway

15

16/34 was a proximate cause of Martin Larry Koppie's death. Municipal defendants contend, as they did below, that it was pilot error, and not the condition of the RSA's terrain, that caused the death of plaintiffs' decedent.

Plaintiffs argue, on the contrary, that the issues of tort immunity and duty are foreclosed by the doctrine of "law of the case." Under this doctrine, "where an issue has been litigated and decided, a court's unreversed decision on that question of law or fact settles that question 'for all subsequent stages of the suit.'" *Pekin Insurance Co. v. Pulte Home Corp.*, 344 Ill. App. 3d 64, 69 (2003), quoting *Norton v. City of Chicago*, 293 Ill. App. 3d 620, 624 (1997). Plaintiffs note that in *Anderson*, this court's first opinion in this case, "this Court found that municipal defendants *did* owe plaintiffs a duty and that they were not immune from liability." (Emphasis in original.) In plaintiffs' view, these two issues have already been decided and may not be relitigated in the instant appeal.

Plaintiffs also disagree with municipal defendants regarding the issue of proximate cause. According to plaintiffs, the evidence presented at trial was sufficient to establish that the terrain of the RSA was a proximate cause of the crash. Plaintiffs add that municipal defendants have failed to meet the "very difficult standard" for obtaining a judgment notwithstanding the verdict.

Motions for Directed Verdict and Judgment <u>n.o.v.</u>

Plaintiffs correctly note that the standard for obtaining a judgment notwithstanding the verdict is very difficult to meet. In *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538 (2005), this court restated that standard:

"A judgment notwithstanding the verdict presents a question of law that appellate courts review *de novo*. [Citation.] A trial court should enter judgment notwithstanding the verdict only when all the evidence, viewed in a light most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary verdict could stand based on the evidence. [Citations.] Our supreme court further described the standard in *Maple v. Gustafson*, 151 Ill. 2d 445, 452-53, 603 N.E.2d 508, 512 (1992):

> 'A trial court cannot reweigh the evidence and set aside a verdict merely because the jury could have drawn different inferences or conclusions, or because the court feels that other results are more reasonable. [Citations.] Likewise, the appellate court should not usurp the function of the jury and substitute its judgment on questions of fact fairly submitted, tried, and determined from the evidence which did not greatly preponderate either way.' *Maple*, 151 Ill. 2d at 452-53, 603 N.E.2d at 512.

Thus, the standard for obtaining a judgment notwithstanding the verdict is a ' "very difficult standard to meet," ' and [is] limited to ' "extreme situations only." ' [Citations.]" *Knauerhaze*, 361 Ill. App. 3d at 547-48.

A trial court's denial of a motion for directed verdict also is reviewed *de novo*. *Moss v. Amira*, 356 Ill. App. 3d 701, 705 (2005).

## 1. Law of the Case

As noted, the law of the case doctrine provides that "where an issue has been litigated and decided, a court's unreversed decision on that question of law or fact settles that question 'for all subsequent stages of the suit.'" *Pekin Insurance Co.*, 344 Ill. App. 3d at 69, quoting *Norton*, 293 Ill. App. 3d at 624.

> "The purpose of the doctrine is to protect settled expectations of the parties, ensure uniformity of decisions, maintain consistency during the course of a single case, effectuate proper administration of justice, and bring litigation to an end. [Citation.] An additional concern addressed by the law of the case doctrine is the maintenance of the prestige of the courts, for the reason that if an appellate court issues contrary opinions on the same issue in the same case, its prestige is undercut." *Emerson Electric Co. v. Aetna Casualty & Surety Co.*, 352 Ill. App. 3d 399, 417 (2004).

There are two exceptions to this doctrine. The first applies when a higher reviewing court, subsequent to the lower reviewing court's decision, issues a contrary ruling on the same issue. "The second exception allows the reviewing court to depart from the doctrine of law of the case if the court finds that its prior decision was palpably erroneous, but only when the court remanded the case for a new trial on all issues." *Martin v. Federal Life Insurance Co. (Mutual)*, 268 Ill. App. 3d 698, 701 (1994).

In *Anderson*, as previously indicated, this court found that municipal defendants *did* owe plaintiffs a duty of care and that municipal defendants were not immune from liability. In

addressing the immunity question, this court rejected municipal defendants' claim that they had discretionary immunity under the Act. In its order denying municipal defendants' petition for rehearing, this court stated:

"The ultimate issue in this case is whether municipal defendants breached their duty to maintain a public airport in a reasonably safe condition, not whether to make improvements to the RSA. Accordingly, municipal defendants' discretionary immunity should not shield them from liability for improper maintenance for [*sic*] the RSAs. A factfinder should decide whether municipal defendants' breached their duty." *Anderson v. Alberto-Culver USA, Inc.*, Nos. 1-99-2166, 1-99-2256, 1-99-2387 cons. (January 10, 2001).

In this passage from the order denying the petition for rehearing, this court also states that municipal defendants owed a duty of care to plaintiffs. According to this court, municipal defendants had a duty to maintain their public airport in a reasonably safe condition. This statement of duty tracks the language of section 3-102 of the Act, which provides, in pertinent part: "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition." 745 ILCS 10/3-102(a) (West 1998).

Having concluded that municipal defendants owed a duty to plaintiffs, and that municipal defendants were not immune from liability, this court reversed the circuit court's previous order of summary judgment in favor of municipal defendants and remanded the cause for trial on the

19

question of whether plaintiffs could demonstrate "that municipal defendants failed to use ordinary care in maintaining the RSA in a reasonably safe condition." *Anderson*, 317 Ill. App. 3d at 1117.

Notwithstanding the foregoing, municipal defendants argue that the doctrine of law of the case does not apply here. They note that *Anderson* was a summary judgment case and that, since the decision in *Anderson* was issued, the Koppie estate's case has gone to trial, resulting in the development of a more detailed factual record than was available to this court in *Anderson*. Municipal defendants appear to argue that because *Anderson* was a summary judgment case and because there is now a more detailed factual record available, the *Anderson* court's previous decisions regarding duty and immunity should be relitigated. Municipal defendants point to a passage from *Anderson* which, in municipal defendants' view, supports this argument. In this passage, which municipal defendants quote in part but which we set forth more fully, this court stated:

> "Municipal defendants argue that to maintain the RSA safely would require an improvement and cost an inordinate amount of money, which they lacked, and that the decision not to take measures to eliminate the hazards of the RSA involved numerous complex factors. The record contains no estimate of the cost to ameliorate hazardous conditions, such as the drainage ditches located to the west of the runway in which evidence supports the thesis that the plane lost its landing gear as a result of traversing the

ditch.  Nor are complex factors identified in the record."  *Anderson*, 317 Ill. App. 3d at 1116.

We find municipal defendants' argument unpersuasive.  This court did note, in this passage, that the record before it contained no estimate of the costs to ameliorate hazardous conditions such as the drainage ditch in the RSA.  Moreover, the record before us in the case at bar does include municipal defendants' estimates of such costs, which, according to these estimates, run into the millions of dollars.  However, this same record includes testimony (which the jury was free to credit) suggesting that the costs, at least with regard to the drainage ditch, might be much lower.  We note, in addition, that municipal defendants cite to no authority for the proposition that the law of the case doctrine does not apply where the previous decision dealt with summary judgment. There are only two exceptions to the law of the case doctrine.  The first, as noted, applies "when a higher reviewing court, subsequent to the lower reviewing court's decision, [renders] a contrary ruling on the same issue."  *Martin*, 268 Ill. App. 3d at 701.  This exception does not apply in the case at bar.  Municipal defendants' petition for leave to appeal the *Anderson* decision to our supreme court was denied.

The second exception, which applies where the earlier decision is found to be "palpably erroneous" (*Martin*, 268 Ill. App. 3d at 701), forms the basis of municipal defendants' alternative argument on the law of the case issue.  Municipal defendants urge us to apply this second exception by finding that the *Anderson* decision was "palpably erroneous."  We decline to apply this exception, for two reasons.  First, we do not believe that the decision in *Anderson* was

21

"palpably erroneous." Second, even if we did, this exception to the law of the case doctrine would not apply. The reason is that the "palpably erroneous" exception is applicable only when the previous decision "remanded the case for a new trial on all issues." *Martin*, 268 Ill. App. 3d at 701. Here, *Anderson* did not remand the case for a trial on *all* of the issues. Instead, the case was remanded to determine whether municipal defendants breached their duty to maintain the RSA in a reasonably safe condition. *Anderson* did not remand for a determination as to whether municipal defendants owed a duty or whether they were immune from liability. These issues had already been decided.

In sum, we conclude that the decisions in *Anderson* finding that municipal defendants owed a duty of care to plaintiffs and that municipal defendants were not immune from liability constitute the law of this case regarding these issues. As such, these decisions are binding on this court. *Emerson Electric Co.*, 352 Ill. App. 3d at 417. With regard to these two issues, immunity and duty, the circuit court did not err in denying municipal defendants' motions for directed verdict and judgment n.o.v.

## 2. Proximate Cause

Municipal defendants next argue that plaintiffs failed to establish a proximate causal connection between the condition of the RSA west of runway 16/34 and the crash resulting in the death of plaintiffs' decedent. According to municipal defendants, it was not the condition of the RSA terrain that proximately caused this accident. Rather, in municipal defendants' view, it was the "active negligence" of the pilots that was the proximate cause of the crash. Municipal

22

defendants contend that, for this reason, the trial court erred in denying their motions for directed verdict and judgment n.o.v.

"A trial court should enter judgment notwithstanding the verdict only when all the evidence, viewed in a light most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary verdict could stand based on the evidence." *Knauerhaze*, 361 Ill. App. 3d at 547. The same principle applies to directed verdicts. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967).

In the case at bar, there was evidence to support municipal defendants' contention that pilot error might have led to the crash. Municipal defendants presented testimony indicating that the pilots might have been able to prevent the aircraft from veering into the RSA by applying the rudder or the brakes, among other things. Municipal defendants also presented testimony indicating that the pilots might have been able to prevent the accident if they had aborted the flight. However, there was also evidence that high winds were a factor in causing the aircraft to veer from the runway centerline, that less than three seconds elapsed from the time the plane veered from the centerline until it went off the runway surface into the RSA, and that the plane struck the drainage ditch within one second after leaving the paved runway. In addition, there was evidence that the plane suffered considerable damage as it traversed the RSA, and that it probably was unflyable by the time it launched into the air after striking the berm.

Viewing this evidence in a light most favorable to plaintiffs, we cannot conclude that the evidence so overwhelmingly favored municipal defendants that no verdict against municipal

defendants could ever stand. Our conclusion in this regard is bolstered by the jury's answer to the special interrogatory. The jury was asked this question: "Was something or the negligent conduct of someone else, other than [municipal defendants], the sole proximate cause of this aircraft accident?" The jury answered this question in the negative.

With regard to the issue of proximate cause, the circuit court did not err in denying municipal defendants' motions for directed verdict and judgment n.o.v.

Request for a New Trial

Municipal defendants next argue that, for a variety of reasons, the circuit court erred in refusing to grant municipal defendants a new trial. When presented with a motion for a new trial, a circuit court will weigh the evidence and set aside the verdict and order a new trial if the verdict is contrary to the manifest weight of the evidence. *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992); *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 132 (1999). A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence. *McClure*, 188 Ill. 2d at 132. "A reviewing court will not reverse a circuit court's decision with respect to a motion for a new trial unless it finds that the circuit court abused its discretion." *McClure*, 188 Ill. 2d at 132-33. "An abuse of discretion occurs when the judge's ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *Barton v. Chicago & North Western Transportation Co.*, 325 Ill. App. 3d 1005, 1026 (2001).

1. Allocation of Fault

24

Municipal defendants argue that the jury's allocation of fault in this case is against the manifest weight of the evidence, and for this reason the circuit court should have granted the motion for a new trial. In its verdict on the Koppie estate's claims against municipal defendants and Alberto-Culver, the jury found that municipal defendants were 90% at fault, Alberto-Culver was 5% at fault, and "Martin Larry Koppie/Aon Aviation, Inc." was 5% at fault. Municipal defendants contend that it was against the manifest weight of the evidence for the jury to find them 90% at fault, compared with only 5% for each of the pilots.

In support of this view, municipal defendants point to the jury's verdict in the contribution cases. In those cases, the jury found in favor of Alberto-Culver on its contribution claims against Aon Aviation. In its verdict, the jury allocated 90% of the fault to municipal defendants, 6% to Alberto-Culver and 4% to Aon Aviation. Municipal defendants note the difference in the allocation of fault regarding Alberto-Culver and Aon Aviation. In the verdict in the Koppie estate's claims, the fault was allocated equally between Aon Aviation and Alberto-Culver (5% each), while in the verdict on the contribution claims, the relative fault was altered (6% for Alberto-Culver versus 4% for Aon Aviation). Municipal defendants appear to argue that this difference in allocation from one verdict to the next undermines the credibility of all of the allocations in both verdicts. We reject this contention. First, municipal defendants were not a party to the contribution cases, which were between Alberto-Culver and Aon Aviation. The circuit court's judgment in the contribution cases was not appealed, and the jury's allocations in these cases have no bearing on the instant appeal. Second, regardless of any variations in the

25

allocation between the two pilots from one verdict to the next, each verdict allocated the same fault, 90%, to municipal defendants. With regard to municipal defendants, there was no inconsistency from one verdict's allocation to the next.

We find unpersuasive municipal defendants' argument that the jury's allocation of 90% fault to them was against the manifest weight of the evidence. "A verdict may not be set aside [by a reviewing court] merely because the jury could have determined the credibility of the witnesses differently or drawn different inferences of fact, and where credible evidence supports the verdict, the court may not say that the conclusions other than the ones drawn by the jury are more reasonable." *Didier v. Jones*, 61 Ill. App. 3d 22, 27 (1978). In our view, the jury's allocation of fault in the case at bar was supported by credible evidence. This allocation was not against the manifest weight of the evidence. The trial court did not abuse its discretion in rejecting municipal defendants' claim that they were entitled to a new trial on this ground.

## 2. Carl Lee Remmel

Municipal defendants contend that the trial court erred in granting plaintiffs' motion in *limine* barring the questioning of Carl Lee Remmel, one of plaintiffs' experts, about conditions at any other airport managed by Remmel. Municipal defendants note that Remmel was the director of DeKalb Peachtree Airport in Atlanta. According to municipal defendants, there was a detention pond in the RSA at DeKalb Peachtree Airport, and DeKalb Peachtree therefore was not in compliance with the same federal rules that Remmel testified were violated by Palwaukee. Municipal defendants argue that they were prejudiced by their inability to cross-examine

Remmel about his conduct at his airport. Municipal defendants contend that the trial court erred in refusing to grant them a new trial on this ground.

"Admission of evidence is a matter within the discretion of the trial court and evidentiary rulings will not be reversed absent an abuse of discretion." *Israel v. National Canada Corp.*, 276 Ill. App. 3d 454, 463 (1995). "An abuse of discretion occurs when the judge's ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *Barton*, 325 Ill. App. 3d at 1026.

In the case at bar, the issue was whether municipal defendants failed to exercise ordinary care in maintaining the RSA at Palwaukee in a reasonably safe condition. Testimony about conditions at DeKalb Peachtree Airport were irrelevant to whether Palwaukee was maintained in a reasonably safe condition. See *Swaw v. Klompien*, 168 Ill. App. 3d 705, 718 (1988) ("An expert's statement as to what he would have done in the situation encountered by the defendant doctors is irrelevant since the issue at trial is whether the defendant acted contrary to the standard of care"). The circuit court did not abuse its discretion in granting the motion in *limine* barring the questioning of Remmel about conditions at other airports he managed. The trial court correctly rejected municipal defendants' contention that they should be granted a new trial on this ground.

3. Evidence of Prior Accidents

Municipal defendants argue that the trial court erred in allowing evidence of prior dissimilar accidents in the area west of runway 16/34. According to municipal defendants, they were prejudiced by the admission of this evidence, and a new trial therefore is warranted.

At trial, the court allowed counsel for Alberto-Culver to introduce evidence about a 1987 incident at Palwaukee in which a plane, while landing on runway 16/34, departed from the hard surface of the runway and went into the drainage ditch area alongside the runway. The plane flipped over on its back. Municipal defendants argue that this incident and another accident in 1990 (also introduced by counsel for Alberto-Culver) were not similar to the accident in the case at bar, and these two incidents (1987 and 1990) should not have been introduced.

Where evidence of prior accidents is offered to show the existence of a particular danger or hazard, a foundation must be laid establishing the similarity between the prior accidents and the present accident. *Henderson v. Illinois Central Gulf R.R. Co.*, 114 Ill. App. 3d 754, 758 (1983). However, if the evidence of prior accidents is being offered only to show that the defendant had notice of the generally hazardous nature of the accident site, then the proponent is not required to establish a foundation showing the similarity between the prior accidents and the present occurrence. *Henderson*, 114 Ill. App. 3d at 758. "Evidence of dissimilar prior accidents is relevant to the issue of whether the defendant knew the accident site was generally hazardous." *Henderson*, 114 Ill. App. 3d at 758.

In the case at bar, it was this latter purpose that was the reason for the introduction of the prior accident evidence, which came in during Alberto-Culver's questioning of Fred Stewart, the

director of Palwaukee at the time of the 1996 crash. Shortly before introducing evidence of the 1987 incident, counsel for Alberto-Culver asked Stewart this question: "Now, you did have other airplanes go off the runway into that same ditch that our plane went into, didn't you, over the years?" Because the evidence of the 1987 incident, as well as the 1990 accident, was introduced to show municipal defendants' prior notice of the generally dangerous condition of the RSA, it was unnecessary to establish a foundation showing the similarity between these prior incidents and the 1996 crash. It was within the discretion of the trial court whether to admit this evidence. In our view, it was not an abuse of discretion to allow it here. Municipal defendants' argument that a new trial was warranted on this ground is not persuasive.

### 4. William Perry

Municipal defendants next argue that the trial court erred in allowing testimony by William Perry, one of plaintiffs' experts, about the potential explosion of the aircraft after it left the runway. Perry, an experienced pilot with nearly 15,000 hours flying jet aircraft, testified on behalf of plaintiffs by evidence deposition. On direct examination, Perry opined that the pilots in the case at bar made the correct choice in deciding not to attempt to abort the flight once the plane had left the surface of runway 16/34. Perry noted the presence of the drainage ditch off the west edge of runway 16/34, and asserted: "[A]borting an airplane off the hard surface into a ditch is a 100 percent fatality." Perry explained the basis for his view:

"Because when the airplane would have departed the surface, it would have

proceeded headlong, nose first into the ditch because of the forward pressure I'm

29

speaking of here. The rest of the plane would have followed right behind it. And the best term I could come up with is the accordion effect. The airplane would certainly have exploded."

Municipal defendants argue that Perry lacked sufficient qualifications to render this opinion. Municipal defendants contend that they were prejudiced as a result, and a new trial therefore is warranted.

The admission of testimony, including expert testimony, is within the sound discretion of the trial court. In the case at bar, Perry was an experienced pilot with more than 3,000 hours of flight time in the Gulfstream IV, the type of plane at issue here. In our view, it was not an abuse of discretion for the trial court to allow Perry to render the opinion testimony in question. We note, in addition, that municipal defendants conducted extensive cross-examination of Perry. During this cross-examination, Perry acknowledged, among other things, that: (1) he did not have an engineering degree, (2) he did not perform any accident reconstruction in this case, and (3) he did not conduct a separate analysis with regard to the passage of the aircraft through the RSA. Given the extent and thoroughness of municipal defendants' cross-examination, we find municipal defendants' contention that they were prejudiced by Perry's testimony unpersuasive.

The circuit court correctly rejected municipal defendants' claim that they were entitled to a new trial on this ground.

5. Willful and Wanton Charges

Municipal defendants contend that the trial court erred in denying their motion for a directed verdict regarding plaintiffs' willful and wanton counts against them. Counts III and IV of plaintiffs' third amended complaint alleged causes of action for willful and wanton misconduct against municipal defendants (in addition to the ordinary negligence claims included in counts I and II). The trial court denied municipal defendants' motion for directed verdict on this issue and instructed the jury on the willful and wanton counts. However, the jury did not return a verdict against municipal defendants on these claims. Municipal defendants argue, nevertheless, that they were prejudiced by the trial court's permitting these issues to be submitted to the jury.

Municipal defendants themselves acknowledge that "normally a reviewing court will not find prejudice where an error relate[s] to a count on which the jury did not return a verdict." We agree and find that municipal defendants' argument that they were prejudiced in this instance is not persuasive.

### 6. Cumulative Error

Municipal defendants argue that the alleged trial errors set forth above, taken together, have the cumulative effect of having deprived municipal defendants of a fair trial. We have already concluded that there was no error in these instances. Accordingly, we need not address this argument further.

In sum, we conclude that municipal defendants were barred by the law of the case doctrine from raising the immunity and duty issues that were previously decided in this court's

opinion in *Anderson*.  We hold, in addition, that the circuit court did not err in denying municipal defendants' motions for directed verdict and judgment n.o.v. with regard to the issue of proximate cause.  Moreover, we reject municipal defendants' claims that they are entitled to a new trial.

## CONCLUSION

For the reasons set forth above, we affirm the judgment of the circuit court in favor of the Koppie estate and against municipal defendants (and Alberto-Culver) in the amount of $11 million (prior to reduction to reflect Koppie's 5% relative degree of fault).

Affirmed.

CAHILL and GARCIA, JJ., concur.