No. 2-09-1345     Filed:  9-22-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JOHN BJORK and STEPHANIE BJORK, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 03--MR--1491 |
| | ) | |
| JOHN DRAPER and LIZ DRAPER, | ) | |
| | ) | |
| Defendants-Appellees | ) | |
| | ) | Honorable |
| (Lake Forest Open Lands Association, | ) | Raymond J. McKoski, |
| Defendant). | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the opinion of the court:

The instant controversy arose after the defendants, John Draper and Liz Draper, made some alterations to their home and property.  These alterations consisted of the addition of a circle driveway, an addition to the residence that totaled in excess of 1,900 square feet, and the addition of several plants and trees.  The defendants' land was subject to a conservation easement that was managed by the Lake Forest Open Lands Association (the Association).  (The Association has been dismissed as a party to the lawsuit.)  The Association allowed the defendants to amend the easement on three occasions to make the alterations to the home and property.  The plaintiffs, John Bjork and Stephanie Bjork, the defendants' neighbors, filed a complaint in the circuit court of Lake County, alleging that the defendants' alterations had violated the conservation easement on the defendants' property.  The plaintiffs further alleged that the conservation easement could not be amended.  The

trial court ruled that, as a matter of law, the conservation easement could be amended. Following a bench trial, the trial court determined that the first two amendments to the easement (regarding the addition of the circle driveway) were proper but that the third amendment (regarding the addition to the home and of the various plants and trees) was not. The plaintiffs appealed, arguing that the trial court erred in finding that the conservation easement could be amended. Alternatively, the plaintiffs argued that the first and second amendments were not valid. This court determined that the conservation easement could be amended; however, neither the first nor the second amendment was valid. Bjork v. Draper (Bjork I), 381 Ill. App. 3d 528, 542 (2008). We therefore reversed the trial court's decision and remanded for additional proceedings. Bjork I, 381 Ill. App. 3d at 545. Specifically, we directed the trial court to equitably consider all of the alterations that had been made to the property and, in its discretion, determine "which alterations, if any, must be removed and which, if any, may be retained." Bjork I, 381 Ill. App. 3d at 543.

Between November 16 and November 25, 2009, the trial court conducted a hearing based on this court's mandate. Following the hearing, the trial court ordered the defendants to remove a portion of the brick turnaround driveway and also remove certain trees. The trial court did not order that the defendants remove any part of the addition to their home. The plaintiffs thereafter filed a timely notice of appeal. We affirm.

### I. Background

The history of this case was set forth in Bjork I. We therefore discuss only those facts that are relevant to the disposition of the current appeal. The defendants' property is located in the Lake Forest Historic District, which is listed on the National Register of Historic Places in recognition of its exceptionally well-preserved buildings and sites of architectural, cultural, and historic significance.

The defendants' property consists of two lots. On lot 1 is a house known as the "Kerrigan House," which is reportedly the oldest house in the Lake Forest Historic District. Lot 2 is approximately 25,000 square feet and is part of the landscaped grounds adjacent to the historic house. On December 30, 1998, lot 2 became subject to the conservation easement, which is managed by the Association. The easement provided that the preservation of the open and landscaped grounds adjacent to the Kerrigan House contributes greatly to the appearance of the Kerrigan House and the public enjoyment of the Lake Forest Historic District. The easement further indicated that the property is located on and visible from Sheridan Road, a public road that forms part of the system of scenic roadways circling Lake Michigan, known as the "Lake Michigan Circle Tour."

The easement further set forth the following terms, which are pertinent to this appeal:

"1. <u>Purpose</u>. It is the purpose of this Easement to assure that the Property will be retained forever predominantly in its scenic and open space condition, as lawn and landscaped grounds.

2. <u>Rights of Grantee</u>. To accomplish the purpose of this Easement the following rights are conveyed to the Grantee by this Easement:

(a) To take such actions as are reasonably necessary and consistent with the terms of this Easement to preserve and protect the conservation values of the Property;

\*\*\*

(c) To view the property in its scenic and open condition at ground level from publicly-accessible land adjacent to the Property;

\* \* \*

3. <u>Prohibited Uses</u>. Any activity on or use of the Property inconsistent with the purpose of this Easement is prohibited. Without limiting the generality of the foregoing, the following activities on and uses of the Property are expressly prohibited:

(a) The placement or construction of any buildings whatsoever, or other structures or improvements of any kind *** except that the existing driveways serving said Lot 1 and the existing encroachment of the Kerrigan House onto the Property may continue;

* * *

4. <u>Development Rights</u>. To the extent that Grantors own or are entitled to development rights which may exist now or at some time hereafter by reason of the fact that under any applicable zoning or similar ordinance the Property may be developed to a use more intensive *** than the Property is devoted as of the date hereof, such development rights shall not be exercisable on, above, or below the Property, nor shall they be transferred to any adjacent parcel and exercised in a manner that would interfere with the preservation and conservation purposes of this Easement. Notwithstanding the foregoing, *** the owner of said Lot 1 may include the area of the Property along with the area of said Lot 1, but only to the extent that inclusion of the area of the Property will permit the construction of an additional one thousand five hundred (1,500) square feet of building floor area on said Lot 1.

In the fall of 2000, the defendants enclosed the screened-in porch on the house and converted it into living space. This porch was located on the first floor, in a portion of the house that encroached onto lot 2. In the fall of 2002, the defendants added an addition to the residence that

totaled in excess of 1,900 square feet. The defendants consulted with the Association prior to building the addition. The Association indicated that it would approve an addition larger than 1,500 square feet in exchange for the defendants' replacing the aluminum siding on the Kerrigan House with wooden siding. The Association's consultant, Stephen Christy, believed that replacing the siding with wooden siding would restore the house to its original condition. After the addition was completed, Christy viewed the property and determined that the addition was not visible from Sheridan Road. He believed that the addition did not impair any conservation purpose set forth in the conservation easement. Additionally, he observed that the addition would not be visible to a person walking past lot 2 on Sheridan Road.

In the fall of 2003, the defendants consulted with Christy about adding a brick driveway turnaround to lot 1. This driveway would encroach on lot 2. Also in 2003, the defendants altered the landscaping on lot 2. The defendants had planted some additional trees in 2001 and 2002, including four evergreens in the southeast corner of lot 2. In October 2003, the defendants removed a row of honeysuckle that was located on the eastern edge of lots 1 and 2. These plants were approximately 9 to 10 feet tall. In place of the honeysuckle, the defendants planted a row of arbor vitae, an evergreen shrub. These plants were approximately five feet tall. After the Association became aware of these landscaping changes, its representatives scheduled a meeting with the defendants. Following this meeting, the defendants made certain agreements with the Association concerning the landscaping.

On November 5, 2003, the defendants and the Association entered into the first of three separate agreements to amend the conservation easement to approve the changes that had been made to the property.

On November 21, 2003, the plaintiffs filed a complaint against the defendants for breach of the conservation easement and for declaratory judgment. The complaint alleged that, because the plaintiffs lived within 500 feet of lot 2, they had standing to enforce the provisions of the conservation easement. See 765 ILCS 120/4 (West 2002). Count I alleged that the conservation easement could not be extinguished or amended without a court order. The plaintiffs alleged that they had been damaged by the breach of the conservation easement in that lot 2 was not being "retained forever predominantly in its scenic and open space condition, as lawn and landscaped grounds, as it existed at the time the conservation easement was granted." The complaint therefore requested $50,000, punitive damages, attorney fees, and costs. Count II demanded specific performance of the conservation easement and sought an order requiring the defendants to reduce the size of the addition to the Kerrigan House to 1,500 square feet or less, to remove the brick driveway turnaround, and to pay the plaintiffs' attorney fees and costs.

On October 17, 2006, following a bench trial on the plaintiffs' complaint, the trial court entered judgment. The trial court held that the conservation easement could be amended and that the first two amendments did not violate the purpose of the conservation easement. As to the alterations the defendants had made to the property, the trial court found that the improvements to the screened-in porch did not violate or materially impair the purpose of the conservation easement. The trial court found that the addition to the Kerrigan House was constructed after an agreement was made with the Association, which agreement was later reduced to writing, and that the cost of reducing the size of the addition would be very expensive and disproportionate to any benefit that would be accorded the plaintiffs. This was particularly true in view of the purpose of the conservation easement and the fact that the addition was not visible from Sheridan Road.

The trial court additionally found that the brick driveway turnaround was not visible to pedestrians and did not materially interfere with the purpose of the conservation easement. As to the landscaping, the trial court found that the defendants' plantings did not conform to the plan set forth in the first and second amendments and that the differences substantially interfered with the purpose of the conservation easement. Specifically, the plants that materially interfered with the purpose of the conservation easement were additional spruce trees in the southeast corner of lot 2, the viburnum in excess of those allowed by the landscape plan, two witchhazel plants, two blackhaws, a hawthorn, and an elm. The trial court therefore ordered that this vegetation be removed. The plaintiffs thereafter filed a timely notice of appeal.

On appeal, this court rejected the plaintiffs' argument that the conservation easement could not be amended. Bjork I, 381 Ill. App. 3d at 539. However, we determined that the amendments at issue were invalid because they conflicted with the express provisions of the easement. Bjork I, 381 Ill. App. 3d at 541-42. We therefore reversed the trial court's judgment and remanded for the trial court to "equitably exercise its discretion as to which alterations, if any, must be removed and which, if any, may be retained." Bjork I, 381 Ill. App. 3d at 543. In remanding with these directions, we explained:

"We believe that in this case it is appropriate for the trial court to exercise its discretion and balance the equities to determine to what relief the plaintiffs are entitled due to the Drapers' violations of the conservation easement. The Drapers' violations were not intentional or culpably negligent such that they would preclude the trial court from balancing the equities of the case. Prior to making most of the alterations, the Drapers did enter into oral agreements with the Association as well as consult with an attorney. Under these

circumstances, preventing the trial court from considering the equities of this case would be contrary to the trial court's obligation to achieve a just result. See Mellon v. Coffelt, 313 Ill. App. 3d 619, 626 (2000)." Bjork I, 381 Ill. App. 3d at 542.

Between November 16 and November 25, 2009, the trial court conducted a hearing following our remand. Of particular relevance to this appeal, George Covington, the attorney who drafted the conservation easement and who worked with the Association, testified that the addition to the house did not have an adverse impact on the conservation values, because the easement was intended to protect the view of the house from Sheridan Road and the addition did not impact that view. Dave Wardeberg, the general contractor for the construction of the addition, testified that the addition cost over $990,887. The cost to restore the house to its preexisting size would be $769,915. Wardeberg testified that it was not possible to arbitrarily reduce the size of the addition by some amount, because demolishing a portion and modifying the remainder could cost more than removing the entire addition.

Michael Sullivan, a real estate appraiser, testified that the fair market value of the home in its present condition was $3.05 million. The value of the home without the addition would be $1.81 million ($1.24 million less than with the addition). Stephen Christy, the former director of the Association, testified that the addition as constructed did not violate or interfere with the purpose of the conservation easement, because the addition was not visible from the public right-of-way.

At the close of the hearing, the trial court found that there had been three violations of the easement: (1) an addition to the residence that totaled in excess of 1,900 square feet; (2) the brick driveway that encroached on lot 2; and (3) the addition of new trees. In determining which alterations, if any, should be removed, the trial court indicated that it had considered many factors

in making its determination, including: (1) the hardship to the defendants; (2) the benefit to the plaintiffs and the public in general; (3) the character of the plaintiffs' conduct; (4) the effect of the conduct on the easement provisions and the purpose of the easement; and (5) the actions of the Association as easement holder.

The trial court found that the plaintiffs' motive in bringing suit to enforce the easement was of minimal importance because the effect of an encroachment upon the easement's purpose was the same, regardless of plaintiffs' motive.

After balancing the equities, the trial court ordered that the brick turnaround portion of the driveway that encroached upon lot 2 be removed. The trial court explained that removal was not difficult, nor prohibitively expensive. Cars parked on the turnaround could be seen from Sheridan Road. The trial court found particularly important that the purpose of the easement was to retain lot 2 in its scenic and open-space condition "as lawn and landscaped grounds." This purpose was clearly and directly frustrated by bricks replacing grass.

The trial court additionally ordered that the new trees that had been added should be removed, as they restrict the views of the property and will restrict the views in greater measure as the trees grow. The trial court found that the removal of the trees would not create a hardship for the defendants.

The trial court then stated that it was not ordering the removal of the addition, the enclosed porch, the garage, or any part thereof. The trial court explained that the expense to restore the house, porch, or garage would be greatly disproportionate to the minimal enhancement of the easement's purpose. The trial court further found that the enclosure of the porch was permissible under the provisions of the original easement. The trial court further noted that the defendants did receive

permission from the easement holder--the Association--to erect an addition greater than 1,500 square feet and that the Association reasonably believed that it had the authority to amend the easement. The trial court additionally commented that it considered a large fine--such as between $200,000 and $400,000--to deter the violation of the easement. However, not finding any authority to impose a fine based on the circumstances of the case, the trial court declined to impose such a fine.

Following the trial court's ruling, the plaintiffs filed a timely notice of appeal.

## II. Discussion

The plaintiffs' first argument on appeal is that the trial court should not have engaged in a balance of the equities. Specifically, the plaintiffs contend that, because the Real Property Conservation Rights Act (765 ILCS 120/0.01 et seq. (West 2008)) expressly authorizes the issuance of an injunction to prevent the violation of a conservation easement, a trial court does not have the discretion to balance the equities. Although this court ruled to the contrary in Bjork I, the plaintiffs insist that this court's opinion as to that issue was wrongly decided and should not be followed. The defendants maintain that our resolution of that issue was correct and that the plaintiffs' first contention is barred by the law-of-the-case doctrine.

Generally, the law-of-the-case doctrine bars relitigation of an issue previously decided in the same case. Long v. Elborno, 397 Ill. App. 3d 982, 989 (2010). This doctrine applies to both issues of law and issues of fact. Alwin v. Village of Wheeling, 371 Ill. App. 3d 898, 910 (2007). Questions of law that are decided on a previous appeal are binding on the trial court on remand as well as on the appellate court in subsequent appeals. Long, 397 Ill. App. 3d at 989. The law-of-the-case doctrine protects settled expectations of the parties, ensures uniformity of decisions, maintains consistency during the course of a single case, effectuates proper administration of justice, and brings

litigation to an end. Petre v. Kucich, 356 Ill. App. 3d 57, 63 (2005). The two recognized exceptions to the law-of-the-case doctrine are: (1) when a higher reviewing court makes a contrary ruling on the same issue subsequent to the lower court's decision, and (2) when a reviewing court finds that its prior decision was palpably erroneous. Long, 397 Ill. App. 3d at 989.

Despite the plaintiffs' invitation to find that Bjork I was wrongly decided, we decline to do so. We continue to believe that, based on the circumstances of this case, it was appropriate for the trial court to exercise its equitable discretion in order to ensure that a just result be achieved. See Mellon, 313 Ill. App. 3d at 626. Accordingly, our original decision was not palpably erroneous, and the plaintiffs' first contention is without merit. See Long, 397 Ill. App. 3d at 989.

The plaintiffs' second contention on appeal is that the trial court erred in not finding that, because the defendants' encroachment of the conservation easement was culpably negligent, they were not entitled to equitable relief. The plaintiffs acknowledge that this court found in Bjork I that the defendants were not culpably negligent. However, the plaintiffs maintain that that finding was not part of this court's mandate and therefore was not binding upon the trial court on remand. The plaintiffs insist that the evidence adduced at the hearing following remand establishes that the defendants were culpably negligent.

When a judgment of a trial court is reversed and the cause is remanded by this court with specific directions as to the action to be taken, it is the duty of the trial court to follow those directions. Harris Trust & Savings Bank v. Otis Elevator Co., 297 Ill. App. 3d 383, 387 (1998). Generally, the correctness of a trial court's action on remand is to be determined from our mandate, as opposed to our opinion. PSL Realty Co. v. Granite Investment Co., 86 Ill. 2d 291, 308 (1981).

This proposition, however, is based upon the assumption that the direction contained in our mandate is precise and unambiguous. Harris, 297 Ill. App. 3d at 387.

Here, this court's mandate provided:

"BE IT REMEMBERED, that, to wit: On the 25th day of April, 2008, a Decision of the aforementioned Court was entered of record and in accordance with the views expressed in the attached Decision the judgment of the trial court is Affirmed in part, Reversed in part and Remanded."

Based on this court's mandate, the trial court was required to review this court's decision and act "in accordance with the views expressed" therein. In Bjork I, we expressed the view that "[t]he Drapers' violations [of the conservation easement] were not intentional or culpably negligent such that they would preclude the trial court from balancing the equities of the case." Bjork I, 381 Ill. App. 3d at 542. Based on this finding, the trial court did not have discretion to reassess whether the defendants' actions were intentional or culpably negligent. See Alwin, 371 Ill. App. 3d at 910. Further, this court's finding became binding on all subsequent stages of litigation, even if a "more detailed factual record" was available after remand. Alwin, 371 Ill. App. 3d at 912-13.

The plaintiffs' final contention on appeal is that the trial court erred in not balancing the equities in their favor. They argue that the trial court erred in not ordering the defendants to reduce the size of their addition to less than 1,500 square feet.

The trial court's determination of which alterations should be removed is a discretionary ruling and therefore will not be disturbed absent an abuse of discretion. See Schnuck Markets, Inc. v. Soffer, 213 Ill. App. 3d 957, 974 (1991). Factors that may be considered when determining the appropriate remedy for the violation of an easement include (1) the intent of the parties at the time

the easement was entered into; (2) the purpose of the easement; (3) the impact of the violation in relation to the purpose of the easement; (4) the plaintiff's interest in enforcing the easement; (5) the possible hardship to the defendant associated with the removal of the encroaching structure; and (6) reasonable alternatives to the removal of the encroaching structure. Schnuck Markets, 213 Ill. App. 3d at 975-76.

We do not believe that the trial court abused its discretion in not ordering the defendants to reduce the size of their addition. We note that, in making its decision, the trial court adhered to our prior decision and considered together all the alterations that had violated the conservation easement. The trial court ordered that the trees and the vegetation that violated the easement be removed as well as the portion of the circle driveway that encroached on the area protected by the easement. In determining that it would not order the removal of the addition or the restoration of the house, the trial court specifically found that such removal would be greatly disproportionate to any minimal enhancement of the easement's purpose. This finding is consistent with the evidence presented at the hearing. Covington and Christy testified that the addition as constructed did not interfere with the purpose of the easement, because the addition was not visible from Sheridan Road. Both Wardeberg and Sullivan testified that the defendants would incur substantial costs (or incur a substantial financial loss) were they required to remove the addition.

In so ruling, we reject the plaintiffs' argument that the trial court erred in finding that there would be only a minimal enhancement to the conservation easement if the size of the addition were reduced to 1,500 square feet. The plaintiffs argue that the trial court's order rendered meaningless the provisions of the conservation easement relating to the size of the addition and thus was improper. See Srivastava v. Russell's Barbecue, Inc., 168 Ill. App. 3d 726, 730 (1988). In other terms, the

plaintiffs are essentially arguing that the trial court could do nothing other than order the defendants to reduce the size of their addition to less than 1,500 square feet. Thus, once again, the plaintiffs are attacking the trial court's ability to use its equitable powers to determine how a violation of a conservation easement should be remedied. As we explained in Bjork I, based on the circumstances of this case, the court's use of its equitable powers was proper. See Bjork I, 381 Ill. App. 3d at 543.

The plaintiffs also insist that the violation was not minimal. As the plaintiffs observe, the trial court indicated that, if it were authorized to impose a fine, it would consider imposing one of between $200,000 and $400,000. The plaintiffs argue that the trial court's consideration of such a large fine "clearly indicates the magnitude of the violation by [the defendants] was not de minimus [sic]."

We do not believe that the trial court's consideration of imposing a large fine demonstrates that it abused its discretion in not ordering the defendants to reduce the size of their addition. Rather, we believe that the trial court's consideration of such a fine indicates that it considered numerous factors before deciding what was the most equitable way to resolve the case before it. Thus, the trial court's consideration of the imposition of a fine is not a basis to disturb its ruling.

The plaintiffs additionally argue that the trial court's order was improper because the defendants failed to present any evidence of the cost to reduce the size of the addition to 1,500 square feet. The plaintiffs insist that the evidence the defendants did produce, regarding the cost to remove the entire addition, was irrelevant because the plaintiffs were not seeking that relief. The plaintiffs' argument is without merit. At the hearing, Wardeberg testified that the cost to remove the entire addition would be $769,915. He further testified that it was not possible to arbitrarily reduce the size of the addition by some amount, because demolishing only a portion and modifying the remainder

might cost more than removing the entire addition. Wardeberg's testimony therefore established that the cost to reduce the size of the addition to just 1,500 square feet would be substantial.

We also reject the plaintiffs' arguments that the trial court neither considered the plaintiffs' and the public's interest in enforcing the conservation easement nor considered the benefits of reduced taxes the defendants received by virtue of the conservation easement. In announcing its decision, the trial court specifically stated that it had considered the benefits to the plaintiffs and the public in general in enforcing the easement. As to the defendants' benefits of reduced taxes, we agree with the defendants that the Lake County assessor remains free to assess the property in any amount it sees fit, given the easement and the addition. Accordingly, the plaintiffs' last arguments are also without merit.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

BOWMAN and HUTCHINSON, JJ., concur.