No. 2--06--1145        Filed: 4-25-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JOHN BJORK and STEPHANIE BJORK, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiffs-Appellants and | ) | |
| Cross-Appellees, | ) | |
| | ) | |
| v. | ) | No. 03--MR--1491 |
| | ) | |
| JOHN DRAPER, LIZ DRAPER, and LAKE | ) | |
| FOREST OPEN LANDS ASSOCIATION, | ) | |
| | ) | Honorable |
| Defendants-Appellees and | ) | Stephen E. Walter, |
| Cross-Appellants. | ) | Judge, Presiding. |

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The instant controversy arises from a dispute between the plaintiffs, John and Stephanie Bjork, and their neighbors, the defendants John and Liz Draper, as to whether a conservation easement on the Drapers' property could be amended. The defendant Lake Forest Open Lands Association (the Association) is in charge of managing the conservation easement. The Association allowed the Drapers to amend the easement on three occasions. The trial court ruled that, as a matter of law, the conservation easement could be amended. Following a bench trial, the trial court determined that the first two amendments to the easement were proper but that the third amendment was not. The Bjorks filed a notice of appeal, contending that the trial court erred in determining that the conservation easement could be amended. The defendants filed a cross-appeal, asserting that the

trial court erred in determining that the entire third amendment was invalid. We affirm in part, reverse in part, and remand for additional proceedings.

I. Background

On December 30, 1998, J. Douglas Gray and Karen Z. Gray of 1240 North Sheridan Road in Lake Forest made a grant of a conservation right and easement in favor of the Association. This easement was granted pursuant to the provisions of the Real Property Conservation Rights Act (Act) (765 ILCS 120/10.01 et seq. (West 1998)). The Act pertains to preserving property that has some significant natural, historic, architectural, cultural, or scenic feature. 765 ILCS 120/1 (West 1998); see also G. Covington, Conservation Easements: A Win/Win for Preservationists and Real Estate Owners, 84 Ill. B.J. 628, 628 (1996). The Internal Revenue Code (Code) provides that conservation easements are tax deductible if they meet certain requirements in the Code or in regulations. 26 U.S.C. §170(a)(1) (2000). Under sections 170(f)(3)(B)(iii) and 170(h) of the Code, a person who contributes a "qualified real property interest" to a "qualified organization" exclusively for a "conservation purpose" can claim an income tax charitable deduction to the extent of the value contributed. 26 U.S.C. §§170(f)(3)(B)(iii), (h) (2000); see 84 Ill. B.J. at 629. A "qualified real property interest" is defined by the Code as being "a restriction granted in perpetuity on the use which may be made of the real property." (Emphasis omitted.) 26 U.S.C. §170(h)(2)(c) (2000); see 84 Ill. B.J. at 629.

The Grays' property is located in the Lake Forest Historic District, which is listed on the National Register of Historic Places in recognition of its exceptionally well-preserved buildings and sites of architectural, cultural, and historic significance. The easement provided that the Grays' property consisted of two lots. On lot 1 is a house known as the "Kerrigan House," which is

reportedly the oldest house in the Lake Forest Historic District. Lot 2 is approximately 25,000 square feet in size and is adjacent to and part of the landscaped grounds of the historic house. The easement set forth that the preservation of the open and landscaped grounds adjacent to the Kerrigan House contributes greatly to the appearance of the Kerrigan House and the public enjoyment of the Lake Forest Historic District. The easement further provided that the property is located on and visible from Sheridan Road, a public road that forms part of the system of scenic roadways circling Lake Michigan, known as the "Lake Michigan Circle Tour."

The easement indicated that, by providing to the Association an easement on lot 2 the Grays sought to achieve certain conservation purposes, including the preservation of the conservation values of the property by continuing land-use patterns existing at the time of the grant and, in general, by preserving the lawn and landscaped grounds surrounding the Kerrigan House as well as a significant parcel of open space along Sheridan Road. The easement additionally stated that the Association agreed to accept the grant to honor the intentions of the Grays and to endeavor to preserve and protect in perpetuity the conservation values of lot 2 for the benefit of the present and future generations.

The easement further set forth the following terms, which are pertinent to this appeal:

"1. Purpose. It is the purpose of this Easement to assure that the Property will be retained forever predominantly in its scenic and open space condition, as lawn and landscaped grounds.

2. Rights of Grantee. To accomplish the purpose of this Easement the following rights are conveyed to the Grantee by this Easement:

(a) To take such actions as are reasonably necessary and consistent with the terms of this Easement to preserve and protect the conservation values of the Property;

***

(c) To view the property in its scenic and open condition at ground level from publicly-accessible land adjacent to the Property;

* * *

3. Prohibited Uses.  Any activity on or use of the Property inconsistent with the purpose of this Easement is prohibited.  Without limiting the generality of the foregoing, the following activities on and uses of the Property are expressly prohibited:

(a) The placement or construction of any buildings whatsoever, or other structures or improvements of any kind *** except that the existing driveways serving said Lot 1 and the existing encroachment of the Kerrigan House onto the Property may continue;

* * *

4. Development Rights.  To the extent that Grantors own or are entitled to development rights which may exist now or at some time hereafter by reason of the fact that under any applicable zoning or similar ordinance the Property may be developed to a use more intensive *** than the Property is devoted as of the date hereof, such development rights shall not be exercisable on, above, or below the Property, nor shall they be transferred to any adjacent parcel and exercised in a manner that would interfere with the preservation and conservation purposes of this Easement. Notwithstanding the foregoing, *** the owner

of said Lot 1 may include the area of the Property along with the area of said Lot 1, but only to the extent that inclusion of the area of the Property will permit the construction of an additional one thousand five hundred (1,500) square feet of building floor area on said Lot 1.

* * *

7. Grantee's Discretion. Enforcement of the terms of this Easement shall be at the discretion of Grantee, and any forbearance by Grantee to exercise its rights under this Easement in the event of any breach of any term of this Easement by Grantors shall not be deemed or construed to be a waiver by Grantee of such term or of any subsequent breach of the same or any other term of this Easement, or of any of Grantee's rights under this Easement. No delay or omission by Grantee in the exercise of any right or remedy upon any breach by Grantors shall impair such right or remedy, or be construed as a waiver thereof.

* * *

15. Extinguishment. If circumstances arise in the future which render the purpose of this Easement impossible to accomplish, this Easement can only be terminated or extinguished, whether in whole or in part, by judicial proceedings in a court of competent jurisdiction. ***

* * *

16. Assignment. This Easement is transferable***. *** As a condition of such transfer, Grantee shall require the transferee to agree that the conservation purposes that this grant is intended to advance shall continue to be carried out in perpetuity.

* * *

23. General Provisions

* * *

(d) Entire Agreement. This instrument sets forth the entire agreement of the parties with respect to the Easement and supersedes all prior discussions, negotiations, understandings, or agreements relating to the Easement, all of which are merged herein. No alteration or variation of this instrument shall be valid or binding unless contained in a written amendment first executed by Grantors and Grantee, or their successors, and recorded in the official records of Lake County, Illinois."

On July 14, 2000, the Grays sold the property at 1240 Sheridan Road to the Drapers. Shortly thereafter, the Drapers made several renovations to the residence. In the fall of 2000, the Drapers enclosed the screened-in porch and converted it into living space. This porch was located on the first floor, in a portion of the house that encroached onto lot 2. In the fall of 2002, the Drapers added an addition to the residence that totaled in excess of 1,900 square feet. The Drapers consulted with the Association prior to building the addition. The Association indicated that it would approve an addition larger than 1,500 square feet in exchange for the Drapers replacing the aluminum siding on the Kerrigan House with wooden siding. The Association's consultant, Stephen Christy, believed that replacing the siding with wooden siding would restore the house to its original condition. After the addition was completed, Christy viewed the property and determined that the addition was not visible from Sheridan Road. He believed that the addition did not impair any conservation purpose set forth in the conservation easement. Additionally, he observed that the addition would not be visible to a person walking past lot 2 on Sheridan Road.

In the fall of 2003, the Drapers consulted with Christy about adding a brick driveway turnaround to lot 1. This driveway would encroach onto lot 2. Also in 2003, the Drapers altered the landscaping on lot 2. The Drapers had planted some additional trees in 2001 and 2002, including four evergreens in the southeast corner of lot 2. In October 2003, the Drapers removed a row of honeysuckle that was located on the eastern edge of lots 1 and 2. These plants were approximately 9 to 10 feet tall. In place of the honeysuckle, the Drapers planted a row of arbor vitae, an evergreen shrub. These plants were approximately five feet tall. After the Association became aware of these landscaping changes, its representatives scheduled a meeting with the Drapers. Following this meeting, the Drapers made certain agreements with the Association concerning the landscaping.

On November 5, 2003, the Drapers and the Association entered into an agreement to amend the conservation easement (the first amendment). This document provided that the Drapers and the Association desired to modify the boundaries of the conservation easement but that they intended that the total amount of land subject to the easement would not be diminished and that the conservation values that the easement intended to protect would not be impaired. The effect of this modification was to remove from the easement property a portion of lot 2 upon which the new driveway turnaround was to be located and to replace it with an equal amount of land from lot 1. The total area in question was 809 square feet, or 3.2% of the total size of the easement property. While the driveway turnaround as constructed is not visible from the sidewalk between Sheridan Road and the easement property, the portion of lot 1 that was added to the easement property is visible from the sidewalk and is closer to Sheridan Road.

On November 21, 2003, the plaintiffs filed a complaint against the defendants for breach of the conservation easement and for declaratory judgment. The complaint alleged that, because the

plaintiffs lived within 500 feet of lot 2, they had standing to enforce the provisions of the conservation easement. See 765 ILCS 120/4 (West 2002). Count I alleged that the conservation easement could not be extinguished or amended without a court order. The plaintiffs alleged that they had been damaged by the breach of the conservation easement in that lot 2 was not being "retained forever predominantly in its scenic and open space condition, as lawn and landscaped grounds, as it existed at the time the conservation easement was granted." The complaint therefore requested $50,000, punitive damages, attorney fees, and costs. Count II demanded specific performance of the conservation easement and sought an order requiring the Drapers to reduce the size of the addition to the Kerrigan House to 1,500 square feet or less, to remove the brick driveway turnaround, and to pay the plaintiffs' attorney fees and costs. Count III requested that the court issue a declaratory judgment that the amendment to the conservation easement was not valid.

On March 23, 2004, the Drapers and the Association, along with the Northern Trust Company, executed the second amendment to the conservation easement (the second amendment). The second amendment was identical to the first amendment in substance but, because the Drapers held title to the property through the Northern Trust Company, as trustee under a trust agreement known as Trust No. 9727, restating the first amendment was necessary because it had not been executed by the Northern Trust Company.

On June 13, 2004, the plaintiffs filed a second amended complaint for breach of the conservation easement and for declaratory judgment. On February 4, 2005, the Drapers filed a motion for summary judgment on count III of the plaintiffs' second amended complaint. Count III of the second amended complaint sought a declaratory judgment that the first and second amendments to the conservation easement were not valid and that the terms of the conservation easement could not

be amended. On April 28, 2005, the plaintiffs filed a cross-motion for summary judgment as to count III of their second amended complaint.

On June 15, 2005, following a hearing, the trial court granted the Drapers' summary judgment motion as to count III and denied the plaintiffs' cross-motion. The trial court found that neither the conservation easement nor the amendments were ambiguous. The trial court found that neither the Act (765 ILCS 120/1 et seq. (West 2004)) nor the Code (26 U.S.C. §170(h)(5)(A) (2000)) prohibited amendments to conservation easements. Rather, the trial court found that the conservation easement could be amended "by agreement of the parties to that agreement provided that the amendment is not contrary to any controlling statute, regulation, ordinance or rule of law."

On July 29, 2005, the Drapers and the Association executed a third amendment to the conservation easement (the third amendment). The third amendment recited that, as measured by Lake Forest's current building scale and environment ordinance, the Drapers' addition measured less than 1,500 square feet. The amendment also stated that the Drapers never filed with Lake Forest any document transferring development rights from lot 2 to lot 1 and never took any other action to transfer development rights from lot 2 to lot 1. The parties acknowledged that the addition was not readily visible from Sheridan Road and that, to the extent that it was visible, it was compatible with the overall design of the Kerrigan House. Further, the amendment stated that, with regard to questions raised by adjacent property owners concerning landscaping, a sprinkler system, a portable badminton net, and the removal of a tree, the Association and the Drapers agreed that those matters did not impair the purposes of the conservation easement.

The effect of the third amendment was to remove from the conservation easement the provision allowing the transfer of development rights from lot 2 to lot 1 to the extent that it would

allow a 1,500-square-foot addition to the Kerrigan House. This assured that the 1,500-square-foot area transfer that was originally permitted by the conservation easement would be prohibited. Further, the third amendment modified the conservation easement to the extent necessary to establish that improvements existing at the time of the execution of the third amendment conformed to the requirements of the conservation easement. It established that the trade involving the size of the addition and the re-siding of the house was, according to the Association, a reasonable quid pro quo that was consistent with the purposes of the conservation easement.

On September 26, 2006, the day before trial began, representatives from the Association visited the subject property. The representatives discovered that the landscaping did not conform with the landscaping plan set forth in the first and second amendments. Specifically, at issue were four or five spruce trees and several viburnum plants.

On October 11, 2006, with the consent of the parties, the trial judge visited the property. From walking along the sidewalk, the trial judge found that the plantings on the southeast corner of the property obstructed the view of the home by a pedestrian at the southeast corner of the grounds. The trial judge further found that the viburnum planted along the eastern line of the property topped out above an average observer's height, in part because they were planted at a higher elevation than the sidewalk, and thus those plants would obscure a pedestrian's view from the sidewalk. The trial judge noted that he could not see the brick driveway turnaround and concluded that it would not be visible to a pedestrian, even if the plants did not obstruct the view. After driving both north and south by the property, the trial judge concluded that the view of the house and grounds by a driver of a passenger car was more clear than that by a pedestrian on the sidewalk.

On October 17, 2006, following the conclusion of the bench trial, the trial court entered judgment. The trial court held that the purposes of the conservation easement were:

"[T]he preservation of the conservation values of the property by the continuation of land use patterns existing at the time of this grant, and in general, the preservation of the lawn and landscaped grounds surrounding the Kerrigan House as well as a significant parcel of open space on Sheridan Road, and to *** assure *** that the property *** will be retained forever predominantly in its scenic and open space condition, as lawn and landscaped grounds, all for the benefit of public passing by on Sheridan Road or along the walkways adjacent to Sheridan Road."

The trial court explained that its holding was based on the clear language of the conservation easement as well as the circumstances surrounding its execution. The trial court additionally found that section 23(d) of the conservation easement specifically contemplated the possibility of amendments to the easement.

As to the alterations the Drapers had made to the property, the trial court found that the improvements to the screened-in porch did not violate or materially impair the purposes of the conservation easement. The trial court found that the addition to the Kerrigan House was constructed after an agreement was made with the Association, which agreement was later reduced to writing, and that the cost of reducing the size of the addition would be very expensive and disproportionate to any benefit that would be accorded the plaintiffs. This was particularly true in view of the purposes of the conservation easement and the fact that the addition was not visible from Sheridan Road.

The trial court additionally found that the brick driveway turnaround was not visible to pedestrians and did not materially interfere with the purpose of the conservation easement. As to the

landscaping, the trial court found that the Drapers' plantings did not conform to the plan set forth in the first and second amendments and that the differences substantially interfered with the purpose of the conservation easement. Specifically, the plants that materially impacted the purposes of the conservation easement were additional spruce trees in the southeast corner of lot 2, the viburnum in excess of those allowed by the landscape plan, two witchhazel plants, two blackhaws, a hawthorn, and an elm.

In construing the amendments, the trial court found that the first and second amendments did not materially impair the purposes of the conservation easement and were not otherwise contrary to applicable law or public policy. As to the third amendment, the trial court found that it was entered into on the mistaken assumption that all the Draper's plantings were in accordance with the prior amendments. As the third amendment approved these plantings, the trial court found that it materially interfered with the purposes of the easement and was invalid as a matter of law. The trial court found that the third amendment's provisions with regard to the plantings were not severable from the rest of the agreement. The trial court explained that the basis for this finding was testimony from Association representative Bartram that the Association would not have executed the third amendment if it had been aware of nonconforming landscaping.

Based on these findings, the trial court found that the third amendment was invalid and unenforceable. The Drapers were ordered to remove certain vegetation within 90 days. The trial court awarded the plaintiffs their costs. The trial court denied the plaintiffs all the other relief that they requested. On November 8, 2006, the plaintiffs filed a timely notice of appeal. On November 17, 2006, the Drapers filed a timely notice of cross-appeal.

II. Plaintiffs' Appeal

A. Whether the Conservation Easement Could be Amended

The plaintiffs' first contention on appeal is that the trial court erred in determining that the conservation easement could be amended. Specifically, the plaintiffs argue that the intent of the parties who created the conservation easement was that it be perpetual. The plaintiffs note that the easement uses the phrase "in perpetuity" on at least five occasions. The plaintiffs maintain that there is nothing in the easement to indicate that it could be amended.

It is well established that an easement is " 'a right or a privilege in the real estate of another [citation]' " (McDermott v. Metropolitan Sanitary District, 240 Ill. App. 3d 1, 20 (1992)), which may be created by an express grant that determines the extent of the easement (Duresa v. Commonwealth Edison Co., 348 Ill. App. 3d 90, 101 (2004)). The same rules that apply to deeds and other written instruments apply to grants of easements: in the construction of instruments creating easements, courts ascertain and give effect to the intentions of the parties. Duresa, 348 Ill. App. 3d at 101; McDermott, 240 Ill. App. 3d at 20. That consideration should include the circumstances at the time of the conveyance, including the nature of the interest conveyed and the objective of the conveyance. McDermott, 240 Ill. App. 3d at 20. Where an easement exists by express grant, and the language thereof is clear and free from doubt, the use of the easement must be confined to the terms and purposes of the grant. Duresa, 348 Ill. App. 3d at 101. Courts generally construe easement agreements strictly, so as to permit the greatest possible use of the property by its owner. Duresa, 348 Ill. App. 3d at 101; McMahon v. Hines, 298 Ill. App. 3d 231, 235 (1998). We review the language of an easement de novo. See River's Edge Homeowners' Ass'n v. City of Naperville, 353 Ill. App. 3d 874, 880 (2004).

The easement at issue sets forth that its purpose is "to assure that the Property will be retained forever predominantly in its scenic and open space condition, as lawn and landscaped grounds." The easement later provides, in section 23(d), that "[n]o alteration or variation of this instrument shall be valid or binding unless contained in a written amendment first executed by Grantors and Grantee, or their successors." As the above provisions are not ambiguous, the plain language controls. See Duresa, 348 Ill. App. 3d at 101. Consequently, the easement could be amended.

In arguing that the easement could not be amended, the plaintiffs insist that, because the document uses the phrase "in perpetuity" on five different occasions, such language indicates that the drafters intended that it never be amended. We disagree. The first three references to "in perpetuity" occur in the preamble. The preamble first sets forth that the "Grantors further intend, as owners of the Property, to convey to Grantee the right to preserve and protect the conservation values of the Property in perpetuity." Later, the preamble states:

"[The] Grantee agrees by accepting this grant to honor the intentions of [the] Grantors stated herein and to endeavor to preserve and protect in perpetuity the conservation values of the Property for the benefit of this generation and the generations to come."

Both of these references refer to the property's "conservation values" being protected in perpetuity. The conservation values of the property are not synonymous with the language of the easement. Thus, although the easement sets forth that the conservation values of the property are to be protected in perpetuity, it does not logically follow that the language of the easement could never be amended to allow that to occur. Indeed, it is conceivable that the easement could be amended to add land to the easement. Such an amendment would most likely enhance the conservation values of the property.

The third reference to "in perpetuity" provides that "Grantors hereby voluntarily grant and convey to Grantee a conservation right and easement (the 'Easement') in perpetuity over the Property of the nature and character and to the extents hereinafter set forth." (Emphasis added.) In order to understand this reference, one must look to the language that the entire easement "set[s] forth." Section 23(d) clearly provides that the easement may be amended.

The fourth reference to "in perpetuity" occurs in section 16. This section provides that "Grantee shall require the transferee to agree that the conservation purposes that this grant is intended to advance shall continue to be carried out in perpetuity." The plain language of this section indicates that the "conservation purposes" of the easement are to be carried out "in perpetuity." Like the property's "conservation values," the easement's "conservation purposes" being protected in perpetuity is not the same as the easement's language being protected in perpetuity. It is possible that the conservation purposes of the easement could remain the same even if the language of the easement were subsequently altered. Indeed, the drafters of the easement envisioned this, as is evident by their insertion of section 23(d), which specifically allows for amendments.

The final reference to "in perpetuity" occurs in section 20. This section provides that "Grantee may, prior to the fortieth anniversary of the date of this Easement and at such other times as Grantee deems necessary, record a claim pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/13--18, for the purpose of preserving the lien of this Easement in perpetuity." This provision provides that the lien of the easement, not its specific language, will last "in perpetuity." Thus, none of these references support the plaintiffs' argument that the specific language of the easement prohibited it from being amended.

The plaintiffs additionally argue that the trial court erred in relying on section 23(d) to determine that the easement could be amended, because that section conflicts with those provisions that set forth the purposes of the easement. See Premier Title Co. v. Donahue, 328 Ill. App. 3d 161, 166 (2002) (explaining that " 'it is a basic principle of contract construction that where two clauses conflict, it is the duty of the court to determine which of the two clauses most clearly expresses the chief object and purpose of the contract' [citation]"). In making this argument, the plaintiffs rely on the above references to the easement being granted "in perpetuity." As noted above, none of the provisions that the plaintiffs rely upon specifically provide that the language of the easement could not be amended. Additionally, it is well settled that, when construing a document, a reviewing court should avoid any interpretation that would render a section meaningless. See Srivastava v. Russell's Barbecue, Inc.,168 Ill. App. 3d 726, 730 (1988) (contracts should be interpreted as a whole, giving meaning and effect to each provision thereof). We reject the plaintiffs' request for this court to ignore the plain language of section 23(d).

The plaintiffs next argue that amendments to this type of conservation easement are not allowed under either the Code (26 U.S.C. §170(h)(5)(A) (2000)) or the Act (765 ILCS 120/1 (West 2004)). This argument is premised on the plaintiffs' assertion that "[t]here is no provision in the Conservation Easement that allows the parties to amend or modify the Conservation Easement." However, as explained above, this argument is without merit because section 23(d) of the easement sets forth that the easement may in fact be amended.

B. Validity of First and Second Amendments to the Conservation Easement

The plaintiffs' second contention on appeal is that the trial court erred in ruling that the first and second amendments to the conservation easement were valid. The plaintiffs argue that, even if

the easement could be amended, those amendments are invalid because they materially alter the easement and materially interfere with the conservation purposes. Specifically, the plaintiffs note that section 3 of the easement prohibits certain uses of the property. The plaintiffs maintain that any amendment to section 3 constitutes a per se material interference with the conservation purpose. The plaintiffs insist that certain uses or activities are prohibited because the original parties determined that such uses and activities would materially interfere with the conservation purposes. The plaintiffs argue that the trial court should not be allowed to substitute its judgment of what uses or activities interfere with the conservation purposes for the parties' clearly stated intent.

Section 3(a) of the easement specifically prohibited any improvement on the subject property. Thus, the easement did not allow the Drapers to use any part of lot 2 to install their new driveway. However, the first and second amendments specifically allowed the Drapers to build on part of lot 2 in exchange for transferring into the easement property an equal amount of land from lot 1.

As explained above, a contract should be interpreted as a whole, giving meaning and effect to each provision thereof. See Srivastava, 168 Ill. App. 3d at 730. Here, the easement set forth in section 1 that its purpose was to assure that the property would be "retained forever predominantly in its scenic and open space condition, as lawn and landscaped grounds." Section 3 provided that this purpose would be achieved, in part, by "expressly prohibit[ing]" "[t]he placement or construction of any buildings whatsoever, or other structures or improvements of any kind." Section 15 provided that the easement could "only be terminated or extinguished, whether in whole or in part, by judicial proceedings in a court of competent jurisdiction."

The trial court's construction of the easement essentially rendered the above provisions meaningless. Although section 23(d) provided that the easement could be amended, that section must

be interpreted in harmony with the other provisions of the easement. That is accomplished by interpreting section 23(d) to mean that, although the easement allows amendments, no amendment is permissible if it conflicts with other parts of the easement. Section 3 expressly prohibits improvements of any kind to the easement property. However, that is what the first and second amendments specifically authorize, allowing the Drapers to construct a driveway that encroaches onto the easement property. As the first and second amendments conflict with the plain language of section 3, the trial court erred in determining that those amendments were valid. We therefore reverse the trial court's judgment on that matter. As we determine that the first and second amendments were not valid based on the plain language of the easement, we need not address whether the amendments were also invalid on public policy grounds.

Having determined that the first and second amendments were not valid, we next address to what relief the plaintiffs are entitled. The plaintiffs insist that there is no provision in section 4(c) of the Act to require a balancing of the equities or great necessity for specific performance. The plaintiffs maintain that, if a finding of great necessity were required for specific performance of a conservation easement, it is unlikely that any adjacent property owner could meet the criteria for enforcement of a conservation easement. The plaintiffs contend that the trial court should not be allowed to substitute its judgment, under the guise of balancing the equities, as to what uses of the property interfere with the conservation purposes of the easement for the clearly stated intent of the parties.

A court may grant such relief as it deems equitable to enforce an easement, and the granting or denying of such relief is a discretionary ruling by the court. Page v. Bloom, 223 Ill. App. 3d 18, 23 (1991). Absent an abuse of discretion, such a ruling will not be overturned upon review. Schnuck

Markets, Inc. v. Soffer, 213 Ill. App. 3d 957, 974 (1991). However, when an encroachment of an easement is intentional or culpably negligent, the court may properly refuse to balance the equities. Borrowman v. Howland, 119 Ill. App. 3d 493, 502 (1983).

We believe that in this case it is appropriate for the trial court to exercise its discretion and balance the equities to determine to what relief the plaintiffs are entitled due to the Drapers' violations of the conservation easement. The Drapers' violations were not intentional or culpably negligent such that they would preclude the trial court from balancing the equities of the case. Prior to making most of the alterations, the Drapers did enter into oral agreements with the Association as well as consult with an attorney. Under these circumstances, preventing the trial court from considering the equities of this case would be contrary to the trial court's obligation to achieve a just result. See Mellon v. Coffelt, 313 Ill. App. 3d 619, 626 (2000).

That being said, the plaintiffs' concern is valid that an adjacent property owner would have great difficulty demonstrating the need for the specific performance of a conservation easement. The detriment and cost to the landowner associated with returning the affected property to its original condition would in most cases far outweigh any benefit to the adjacent landowner. Moreover, if a landowner could avoid complying with the terms of a conservation easement by making alterations and then claiming that it would be too costly (and, thus, inequitable) to return the property to its original condition, then the restrictions placed in a conservation easement could be rendered meaningless. As explained above, we must avoid interpreting an easement such that any provision becomes superfluous. See Srivastava, 168 Ill. App. 3d at 730.

Based on the above considerations, we remand this cause for the trial court to equitably consider which of the alterations to the property the Drapers must remove. We note that the trial

court determined that the third amendment was not valid and thus equitably determined which of those alterations should be removed. However, as we have now determined that neither the first nor the second amendment is valid, we believe that, on remand, the trial court should equitably consider again whether any of the alterations to the property should be removed. If the trial court were to consider the changes individually or consider only those approved by the first and second amendments, the trial court could determine that none of the alterations should be removed. This would in effect validate the plaintiffs' concern that an adjacent property owner would be deprived of any relief if a conservation easement were violated. By considering all of the changes together, the trial court is in the best position to equitably exercise its discretion as to which alterations, if any, must be removed and which, if any, may be retained.

### C. Attorney Fees

The plaintiffs' final contention on appeal is that the trial court erred in not awarding them attorney fees. The plaintiffs note that the conservation easement provides that, in the event the defendants are adjudicated to have violated any of their obligations, they shall then reimburse the grantee for any expenses incurred in connection with the enforcement of its rights, including attorney fees. The plaintiffs maintain that, since they have standing to enforce the terms of the conservation easement, pursuant to section 4 of the Act they are entitled to reimbursement of their attorney fees incurred in enforcing the conservation easement.

Ordinarily, the losing party in a lawsuit cannot be required to pay attorney fees to the winning party. Chapman v. Engel, 372 Ill. App. 3d 84, 87 (2007). There is an exception to the rule, however; contractual "fee-shifting" provisions for the award of attorney fees will be enforced by the courts. Chapman, 372 Ill. App. 3d at 87.

Here the conservation easement contained the following "fee-shifting" provision:

"Grantors shall reimburse Grantee for any costs or expenses incurred in connection with the

enforcement of its rights, including court costs and attorneys' fees."

Our decision on this issue turns on the precise wording of this fee-shifting provision. We are required

to strictly construe a contractual provision for attorney fees. Grossinger Motorcorp, Inc. v. American

National Bank & Trust Co., 240 Ill. App. 3d 737, 752 (1992). That is, we construe the fee-shifting

provision "to mean nothing more--but also nothing less--than the letter of the text." Erlenbush v.

Largent, 353 Ill. App. 3d 949, 952 (2004). The construction of a contract's fee-shifting provision

presents a question of law, which we review de novo. Fontana v. TLD Builders, Inc., 362 Ill. App.

3d 491, 510 (2005).

In the case herein, the Association was the grantee of the easement, not the plaintiffs. Thus,

based on the principles enunciated above, the plaintiffs are not entitled to the recovery of their

attorney fees. The trial court therefore did not err in denying them this requested relief. See

Chapman, 372 Ill. App. 3d at 87.

### III. The Drapers' Cross-Appeal

In their cross-appeal, the Drapers maintain that the trial court erred in determining that the

entire third amendment was not valid. The Drapers argue that the third amendment was a severable

document and that the landscaping provisions in that amendment, which were invalid, should not

render the entire amendment invalid.

In determining whether a contract is divisible, as in other aspects of contract interpretation,

a court attempts to effectuate the intent of the parties. Kaplan v. Keith, 60 Ill. App. 3d 804, 808

(1978). Of course, in reality, especially in a case that reaches litigation, the parties often will not have

considered the question of divisibility in making their contract, so in practice " '[t]he test is whether, had the parties thought of it, they would be willing to exchange the part performance irrespective of what transpired subsequently.' " Kimco Corp. v. Murdoch, Coll & Lillibridge, Inc., 313 Ill. App. 3d 768, 773 (2000), quoting Trapkus v. Edstrom's, Inc., 140 Ill. App. 3d 720, 727 (1986). In other terms:

> "A contract is not divisible where the parties assented to all the promises as a single whole so that there would have been no bargain whatsoever if any promise or set of promises were struck out. 6 Williston, Contracts §863 (3rd ed. 1962)." Meredith v. Knapp, 62 Ill. App. 2d 422, 425 (1965).

The trial court's determination of the intent of the parties will not be disturbed on review unless it is contrary to the manifest weight of the evidence. Installco, Inc. v. Whiting Corp., 336 Ill. App. 3d 776, 783 (2002).

On behalf of the Association, Bartram entered into the third amendment to the easement with the Drapers. At trial, the trial court asked Bartram if he would have executed the third amendment had he known that the plantings had not been altered or modified in accordance with the landscape plan. Bartram indicated that he would not have. Thus, the intent of the parties in this case is readily apparent. The Association would not have executed the third amendment to the easement had it known that the plantings on the property were not in conformance with the landscape plan. The trial court therefore properly determined that the third amendment was not a divisible contract and that the entire third amendment was not valid. See Kimco Corp., 313 Ill. App. 3d at 773.

The Drapers insist that Bartram's testimony on the matter is inconclusive because he was never questioned as to whether he would have signed an agreement that was silent as to landscaping.

However, in light of what Bartram did testify to, we need not speculate as to how he may have answered other questions.

### IV. Conclusion

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed in part and reversed in part, and the cause is remanded for additional proceedings.

Affirmed in part and reversed in part; cause remanded for additional proceedings.

BYRNE, P.J., and O'MALLEY, J., concur.