**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190181-U

Order filed February 14, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| JEFFREY GUZLAS, as Trustee for the Jeffrey L. Guzlas Revocable Trust, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0181 Circuit No. 17-CH-2152 |
| FRANK DeSANDRE and DAWN DeSANDRE, | ) ) ) | |
| Defendants-Appellants. | ) ) | Honorable John C. Anderson Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Presiding Justice Lytton and Justice O'Brien concurred in the judgment.

**ORDER**

¶ 1      *Held*: The trial court did not err in finding the express easement operative; granting plaintiff injunctive relief. The trial court erred in finding the easement was permanent.

¶ 2      The plaintiff, Jeffrey Guzlas, as trustee for the Jeffrey L. Guzlas Revocable Trust, and defendants, Frank and Dawn DeSandre, are successors in interest to the dominant and servient estates respectively. In May 1965, an express easement was granted to the dominant estate by deed which contained conditional language. The easement is in the nature of a shared driveway for both

the dominant and servient estates. In 1997, a subdivision was built to the east of the dominant estate with a dead-end street abutting the northernmost portion of the estate. In 2017, the DeSandres began to deny Guzlas access to his property via the easement. The DeSandres demanded that Guzlas use the dead-end street abutting the northernmost portion of his estate for ingress and egress. Guzlas moved for a temporary restraining order and a declaratory judgment requesting injunctive relief. The DeSandres asserted that the easement had extinguished. The trial court found for Guzlas on multiple grounds and granted injunctive relief. We affirm in part and reverse in part.

¶ 3                                    I. FACTS

¶ 4        Doris and Fern Wimberly owned a parcel of real estate that encompassed both the dominant and servient estates in this action. In May 1965, Doris and Fern transferred a portion of that parcel to Ralph and Grace Wimberly which would become the dominant estate. The deed that conveyed this portion contained an easement provision describing the easement dimensions. In addition, the deed contained conditional language that stated, "Such easement to be for the benefit of the Grantee's [*sic*] and their heirs, executors and assigns and to run until such time as the road is constructed providing ingress and egress to the above described premises."

¶ 5        Doris and Fern retained their interest in the servient estate until it was transferred to defendants, Frank and Dawn DeSandre. Plaintiff, Jerry Guzlas, as trustee for the Jerry L. Guzlas Revocable Trust, was the successor in interest to the dominant estate. Guzlas uses the property as his primary residence and leases portions of the property to residential tenants. The easement at issue runs along the western edge of the servient estate and serves as a shared driveway for both the dominant and servient estates.

¶ 6        In approximately 1997, Forest Pointe Subdivision was developed to the east of the properties involved in the current matter. The subdivision consists of a straight stretch of road heading north, parallel to the parties' property, with homes on either side. The road terminates in a cul-de-sac with a dead-end street jutting out of the cul-de-sac to the west. This dead-end portion at the end of the subdivision is known as Tahoe Street. Along either side of the street are sidewalks. The street comes to an end just before the dominant estate, with a guardrail across the entirety of the paved surface. Behind the guardrail is a drainage ditch that has been fortified on the roadside with a concrete wall. A drainage pipe runs beneath Tahoe Street, coming to an end at the concrete wall, emptying into the ditch. Beyond the guardrail and drainage ditch lies the northernmost portion of the dominant estate.

¶ 7        In November 2017, the DeSandres began denying Guzlas and his tenants use of the easement by erecting impediments complete with do not trespass signs on the driveway. They also began parking vehicles longways in a manner meant to block access. The DeSandres contended that the construction of Tahoe Street extinguished the express easement pursuant to the conditional language. Subsequently, Guzlas filed a verified complaint seeking a declaratory judgment and permanent injunctive relief. In addition, Guzlas filed a motion for a temporary restraining order and a preliminary injunction. The court granted preliminary injunctive relief, enjoining the DeSandres from interfering with Guzlas' and his tenants' use of the driveway. The matter proceeded to trial.

¶ 8        Counsel for Guzlas made a short opening argument stating the DeSandres, through pleadings, had admitted the existence of and interference with the easement. The issue then became whether the easement had terminated because of potential access to the dominant estate from Tahoe Street. Counsel argued it had not because the Wimberlys used the phrase "the road" and not

"a road" and Tahoe Street was not the specific road contemplated by the Wimberlys. Guzlas, in his case-in-chief, relied on his amended verified complaint, the verified answer, exhibits depicting aerial views of the area, and a plat of the Forest Pointe Subdivision. After Guzlas rested, the DeSandres moved for a directed finding, arguing Guzlas established extinguishment of the easement. The court denied the motion.

¶ 9        During their case-in-chief, the DeSandres called Guzlas as a witness. Guzlas testified as follows. In 2002, a third party contacted the City of Lockport, inquiring about obtaining access to Tahoe Street from the dominant estate. The city did not raise any objections, provided that engineering plans were submitted to and approved by the city. In 2004, he improved the easement by paving it and constructing a culvert over the drainage ditch in the front of the property. In addition, he "beautified" the area by planting trees and placing boulders along the driveway. Guzlas spent $11,000 on these improvements. He expressed concern about the cost of constructing a new driveway to access Tahoe Street. Aside from the cost to connect to Tahoe Street, the street was approximately 900 feet from his home and the leach field for his septic system was between his house and the street. Guzlas had used Tahoe Street to gain access to his property given proper weather conditions. He could not drive straight onto his property because of the guardrail. Instead, he had to mount the curb, pass over the sidewalk, and trespass on either his neighbor's or the township's property in order to gain access to his land from Tahoe Street. He also instructed his tenants to use Tahoe Street to gain access to the property during improvement of the easement and when blocked by the DeSandres.

¶ 10       Jerome Storako testified. Storako was one of Guzlas' tenants. In nine years as a tenant, he used Tahoe Street for access to and from the dominant estate twice. Given proper weather conditions, he could leave the dominant estate by going around the guardrail, over a curb, and onto

Tahoe Street. Storako navigated this route in his PT Cruiser. He could easily access the dominant estate if the guardrail was removed and a driveway constructed.

¶ 11          Frank DeSandre testified. He stated the easement was a shared driveway and that he had blocked access to the dominant estate. The traffic from the dominant estate worried DeSandre as the easement ran along his backyard. He was concerned for the safety of his young children and dog.

¶ 12          The court took the matter under advisement and on March 15, 2019, entered its written disposition. The written order focused on (1) ambiguities within the language granting the easement, and (2) the burden on the servient landowner to show by clear and convincing evidence the easement had terminated.

¶ 13          The court concluded that when the easement language within the 1965 deed referred to "the road," the parties were referring to a specific road and not any road more aptly evidenced by the phrase "a road" or "any road." Given that the plat creating Tahoe Street was recorded in 1997, it was unlikely the parties were referring to that road in 1965. Further, the dimension of the lot and location of plaintiff's home suggested "the road" would not be located to the east of the dominant estate. Additionally, the DeSandres had failed to show that "the road" could have been a road located to the east of the dominant estate. The court found it more plausible that the parties "envisioned that an area within the easement would be paved and become 'the road[.]' " This interpretation led the court to find the original parties intended the easement to be permanent once a road was constructed on the easement. In the alternative, even if Tahoe Street was "the road" contemplated by the parties, it did not provide ingress and egress to the property as required. The guardrail and topography of the terrain prevented access. Moreover, when Guzlas used Tahoe Street to access the property, he was required to trespass on other property. The trial court found

Guzlas had a right to continue to use the easement and enjoined the DeSandres and their successors in interest from interfering with the use or maintenance of the easement.

¶ 14    This appeal followed.

¶ 15                                II. ANALYSIS

¶ 16    On appeal, the DeSandres contend the trial court erred by (1) denying their motion for a directed finding, (2) reforming the deed to provide a permanent easement, and (3) finding that Tahoe Street did not provide ingress and egress to the dominant estate. Guzlas argues that the trial court did not err on any of the above grounds and did not reform the deed.

¶ 17                              A. Directed Verdict

¶ 18    The DeSandres argue that this court has the ability to review the lower court's denial of their motion for a directed verdict made at the conclusion of Guzlas' case-in-chief. We note that in order for the DeSandres to preserve the question of whether Guzlas established a *prima facie* case for extinguishment, they were required to either stand on their motion or make a second motion for a directed verdict at the close of all the evidence. See *Popadowski v. Bergaman*, 304 Ill. App. 422, 424 (1940) ("Where a defendant makes a motion at the close of plaintiff's case for a directed verdict, if he desires to save his point, he must introduce no evidence. But if he puts in his evidence and desires a directed verdict, he must make a second motion for a directed verdict."); see also 735 ILCS 5/2-1110 (West 2016) ("If the ruling on the motion is adverse to the defendant, the defendant may proceed to adduce evidence in support of his or her defense, in which event the motion is waived.").

¶ 19    Here, the DeSandres did not stand on their motion for a directed finding or make a second motion at the close of all the evidence. As a result, they have waived this contention of error.

¶ 20                            B. Easement Language

¶ 21 The DeSandres also contend that the trial court reformed the deed by finding a permanent easement. In the alternative, they argue that the court's interpretation of the deed was error.

¶ 22 The same rules that apply to deeds and other written instruments apply to grants of easements. *Bjork v. Draper*, 381 Ill. App. 3d 528, 538 (2008). We construe an instrument creating an easement in accordance with the parties' intention. *Cross v. O'Heir*, 2013 IL App (3d) 120760, ¶ 25. "That intention is ascertained from the words of the instrument and the circumstances contemporaneous to the transaction." *Coomer v. Chicago & North Western Transportation Co.*, 91 Ill. App. 3d 17, 23 (1980). "Such circumstances include the situation of the parties, the state of the thing conveyed, the object to be obtained, and the practical construction given by the parties by their conduct." *Id.* A court will not interpret language in a written instrument in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain meaning of the language used. *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2011). Courts generally construe easement agreements strictly to permit the greatest possible use of the property by its owner. *527 S. Clinton, LLC v. Westloop Equities, LLC*, 2014 IL App (1st) 131401, ¶ 28.

¶ 23 "Where the language of an agreement is facially unambiguous, the trial court interprets the contract as a matter of law, without the use of extrinsic evidence." *Cross*, 2013 IL App (3d) 120760, ¶ 26. "However, where an ambiguity exists and extrinsic evidence is required to ascertain the intent of the parties, a question of fact exists, and we will disturb the decision of the fact finder only if it is contrary to the manifest weight of the evidence." *Diaz v. Home Federal Savings & Loan Ass'n of Elgin*, 337 Ill. App. 3d 722, 725 (2002).

¶ 24 First, we address the trial court's finding that the original parties to the express easement "envisioned that an area within the easement would be paved and become 'the road[.]' " The language granting the easement is clear that the easement will cease upon construction of "the

- 7 -

road." The trial court's interpretation that "the road" contemplated by the parties was a road on the easement turns the conditional grant of ingress and egress into a permanent encumbrance on the servient property, increasing the burden on the owner of the servient estate. See *River's Edge Homeowners' Ass'n v. City of Naperville*, 353 Ill. App. 3d 874, 881 (2004) ("If an easement is limited in scope or purpose, the owner of the property subject to the easement burden is entitled to prevent such burden from being increased."). Interpreting the easement in this manner also renders the conditional language of the grant superfluous. See *Bjork*, 381 Ill. App. 3d at 540 ("[I]t is well settled that, when construing a document, a reviewing court should avoid any interpretation that would render a section meaningless."). In essence, the trial court reformed the deed by finding a permanent easement. The trial court's finding of a permanent easement is erroneous.

¶ 25 However, the trial court's interpretation that Tahoe Street was not "the road" did not constitute error. As the trial court pointed out in its ruling, the deed refers to "the road" and not any road. Referring to "the road" without providing either a general location or name, the trial court was left to interpret an ambiguity based on the situation of the parties to the agreement, the state of the thing conveyed, the object to be obtained, and the practical construction given by the parties by their conduct. See *Coomer*, 91 Ill. App. 3d at 23. The burden is on the servient landowner to prove by clear and convincing evidence that the easement has extinguished. See *Brunotte v. DeWitt*, 360 Ill. 518, 533 (1935) ("[B]urden of proof to show abandonment of an easement by clear and unequivocal evidence rests upon the party asserting it."); see also *Ellis v. McClung*, 291 Ill. App. 3d 448 (1997) (party asserting extinguishment of easement via merger has the burden of proving merger).

¶ 26 The DeSandres did not provide sufficient evidence to interpret the term "the road" as a road located immediately east of the northernmost part of the dominant estate. The DeSandres

argue to this court instead that "if a particular road, and only that road, triggered termination, the parties would have named the road or described its location." They go on to argue that the only evidence of the original parties' intent was that "the road" provide ingress and egress.

¶ 27 While reading the easement language as a whole is an exercise we have undertaken, it does not alter the fact that "the road" signals a specific road contemplated by the Wimberlys at the time of the agreement. The manifest weight of the evidence supports the trial court's interpretation that Tahoe Street was not "the road."

¶ 28 Even if the trial court's interpretation of "the road" was error, the DeSandres failed to carry their burden regarding the question of whether Tahoe Street provides ingress and egress, as required. Testimony established that more than a decade ago, the authority that controls Tahoe Street may have been willing to allow Guzlas to connect to the street, pending engineering plans. However, much like seasons, administrations in local government change. The DeSandres presented no evidence to the lower court that Guzlas could actually connect to Tahoe Street at the time of the suit. In its current state, Tahoe Street does not provide ingress and egress as a guardrail and drainage ditch prevent direct access. The evidence shows Guzlas and his tenants have to trespass on the land of others to access the dominant estate from Tahoe Street. There is merely an opportunity for ingress and egress, as opposed to the same being provided. A finding of extinguishment before it is certain that Guzlas can connect to the street would only serve to give him an easement by necessity over the same path the express easement covers. See *Granite Properties Ltd. Partnership v. Manns*, 117 Ill. 2d 425, 435-36 (1987) (an easement by necessity usually arises to allow ingress and egress to landlocked property).

¶ 29 Accordingly, the trial court did not err in finding the express easement remained operative.

¶ 30 III. CONCLUSION

¶ 31  For the foregoing reasons, we affirm in part and reverse in part the judgment of the circuit court of Will County.

¶ 32  Affirmed in part and reversed in part.